**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**
**ERIE DIVISION**

| | | |
|---|---|---|
| ROBERT TROHA and FREDERICK BIGNALL on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | Civil Action No. 05-191-E |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR PARTIAL SUMMARY JUDGMENT ON LIABILITY,**

David A. Cohen
THE CULLEN LAW FIRM
1101 30th Street, N.W., Suite 300
Washington, D.C. 20007
Tel: (202) 944-8600
Fax: (202) 944-8611

Attorneys for Plaintiffs and the Class

December 8, 2006

# TABLE OF CONTENTS

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A.    Plaintiffs' Takings Claim Is Based On The Assertion That Application Of The Federal Trails Act Has Deprived Plaintiffs And Class Members Of Their Property Interests. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

B.    Plaintiffs Are Entitled To Summary Judgment On Liability For Those Parcels In Which The Railroad Acquired Its Interest Through (1) Warranty Deeds Containing "As Long As"Language; (2) Grant And Release Deeds; (3) Release Deeds; (4) Condemnation Awards; And (5) Where There Is No Known Conveyancing Instrument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

1.    The Conveyancing Instruments Categorized As "Grant Deeds With Release Language" Conveyed Only A Right-of-Way For Railroad Purposes. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

2.    The Parties Have Stipulated That For Those Parcels In Which The Railroad Acquired Its Interest Through Warranty Deeds Containing "As Long As"Language;  Release Deeds; Condemnation Awards; And Where There Is No Known Conveyancing Instrument These Instruments Conveyed Only A Right-of-Way for Railroad Purposes Or Fee Simple . . . . . . . . . . . . . .7

C.    But For The Application Of The Rails-To-Trails Act, A&E Abandoned The Railroad Corridor Under Pennsylvania Law And The Land Would Revert To Grantors' Successors In Title. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

1.    Standard For Abandonment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

2.    But For the Application of the Rails-to-Trails Act, A&E Would Have Been Deemed to Have Abandoned the Rail Corridor as of October 30,

2003. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

D.     Plaintiffs Are Entitled To Summary Judgment On Liability For Those
       Parcels In Which The Railroad Acquired Its Interest Through
       Condemnation Proceedings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

       1.     The Railroad Acquired Only An Easement or Conditional Fee
              for Railroad Purposes Where It  Acquired Parcels by Condemnation
              Under the Railroad Act of 1849. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

       2.     The Railroad's Title to "Parcels With No Known Conveyance
              Documentation" Is The Same As If The Railroad Had Obtained
              The Parcel Through Condemnation Proceedings. . . . . . . . . . . . . . . . . . . 16

E.     The Government Is Liable For A Taking Of Plaintiffs' And Class
       Members' Property. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

III.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Glosemeyer v. United States*,

    45 Fed. Cl. 771 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 12, 18

*Lorettor v. Teleprompter CATV Corp.*,

    458 U.S. 419 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Presault v. United States*,

    494 U.S. 1 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

*Presault v. United States*,

    100 F.3d 1525 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Toews v. United States*,

    53 Fed. Cl. 58 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## STATE CASES

*Brookbank v. Benedum-Trees Oil Co.*,

    131 A.2d 103 (Pa. 1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 13

*Buffalo Township v. Jones, ("Buffalo Township II")*,

    813 A.2d 659 (Pa. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Chew v. Com.*,

    161 A.2d 621 (Pa. 1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Eagan v. Nagle,*

      106 A.2d 222 (Pa. 1954) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Fleck v. Universal-Cyclops Steel Corp.,*

      156 A.2d 832 (Pa. 1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 15

*Quarry Office Park Assoc. v. Phila. Elec. Co.,*

      576 A.2d 358 (Pa. Super. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9

*Western Pa. R.R. Co. v. Johnston,*

      59 Pa. 290, 1869 WL 7468 (1868) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## **FEDERAL STATUTES**

*National Trails System Act,*

      16 U.S.C. § 1241 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Little Tucker Act*

      28 U.S.C. § 1346(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## I.    INTRODUCTION

This case was brought under the "Little Tucker Act," 28 U.S.C. § 1346(a)(2), by two individuals who own land adjacent to a recreational trail in Elk and Cameron Counties, Pennsylvania.  Plaintiffs claim that through the application of the National Trails System Act, 16 U.S.C. § 1241 et seq. ("Trails Act"), Plaintiffs were deprived of their rights to possession, control, and enjoyment of their land following the cessation of railroad operations.  Plaintiffs have alleged the application of the Trails Act constituted a "taking" of their property for public use without just compensation, in violation of the Fifth Amendment to the Constitution of the United States.

On February 21, 2006, this Court certified this case as a class action under Federal Rule of Civil Procedure 23(b)(3).  The class was defined as follows:

> All persons who own an interest in land adjoining or constituting part of the railroad corridor formerly operated by the Allegheny and Eastern Railroad, Inc. in Cameron and Elk Counties, Pennsylvania that is subject to a Notice of Interim Trail Use Order issued by the Surface Transportation Board pursuant to the National Trails System Act, 16 U.S.C. § 1247(d), and who have claims in the amount of $10,000 or less by being deprived of their rights to possession, control, and enjoyment of their land as a result of such Trail Use Order, or who waive claims exceeding $10,000 for such damages.  Excluded from this Class are railroad companies and their successors in interest; persons who have filed, intervened, or choose to intervene or opt into separate lawsuits against the United States pursuant to 28 U.S.C. § 1346(a)(2) for compensation for the same interests in land; and persons who are judges and justices of any court in which this action may be adjudicated or to which it may be appealed.

Plaintiffs now move for partial summary judgment on liability on behalf of themselves and the Class certified in this case.

Plaintiffs are entitled to summary judgment on liability as to portions of the former rail corridor in which the railroad acquired only a "right-of-way for railroad purposes" or an

1

"easement" or a "defeasible fee" under Pennsylvania law.

Under Pennsylvania law, when a railroad acquired only an easement interest, either by deed or condemnation, that easement is extinguished upon the railroad's abandonment of the right-of-way. Plaintiffs will demonstrate in the following sections of this Memorandum, that but for the application of the Trails Act, the railroad in this case would have been deemed to have abandoned the corridor and under Pennsylvania law, the parcels of the corridor acquired by easement would have been extinguished, and the land subject to such easements would have reverted back to Plaintiffs and Class members.

The Court should find that the Government's actions, the issuance of trails orders by the STB, precluded abandonment under state law, and prevented Plaintiffs and Class members from obtaining the possession and enjoyment of the corridor. As a result, the Government should be held liable for a taking under the Fifth Amendment to the Constitution.

## II.    FACTS

Plaintiffs incorporate the Joint Statement of Facts stipulated to by the parties in this action. Plaintiffs will not belabor the Court by reiterating a factual statement in this Memorandum.

## III.    ARGUMENT

 A. Plaintiffs' Takings Claim Is Based On The Assertion That Application Of The Federal Trails Act Has Deprived Plaintiffs And Class Members Of Their Property Interests.

It is upon the solid foundation of the Fifth Amendment that this case is premised. In her concurring opinion in *Presault v. United States,* 494 U.S. 1, 22 (1990) ("*Presault I"),* Justice O'Connor made the point that "[t]he scope of the [Interstate Commerce] Commission's authority

2

to regulate abandonments, thereby delimiting the ambit of federal power, is an issue quite distinct from whether the Commission's exercise of power over matters within its jurisdiction effected a taking of petitioner's property . . ." Justice O'Connor reasoned that the actions of the ICC "may delay property owners' enjoyment of their reversionary interests, but that delay burdens and defeats the property interests rather than suspends or defers the vesting of those property rights. Any other conclusion would convert the ICC's power to pre-empt conflicting state regulation of interstate commerce into the power to pre-empt the rights guaranteed by state property law, a result incompatible with the Fifth Amendment." *Id.* (emphasis added).

Whether the Trails Act effects a taking in such a case depends "upon the nature of the state-created property interest that petitioners would have enjoyed absent the federal action and upon the extent of that the federal action burdened that interest." *Id.* at 24. In other words, if the railway easements would have been extinguished but for the application of the Trails Act, then a new easement for a recreational trail has been imposed and the United States is liable for an unlawful taking under the Fifth Amendment.

As the Court of Federal Claims succinctly stated, "[i]t is the thwarted termination of the railroads' rights-of-way – prevented and preempted by operation of the Rails-to-Trails Act – that gives rise to the potential takings claim." *Glosemeyer v. United States*, 45 Fed. Cl. 771, 776 (2000).

3

B.       Plaintiffs Are Entitled To Summary Judgment On Liability For Those Parcels In Which The Railroad Acquired Its Interest Through (1) Warranty Deeds Containing "As Long As"Language; (2) Grant And Release Deeds; (3) Release Deeds; (4) Condemnation Awards; And (5) Where There Is No Known Conveyancing Instrument.

1.      The Conveyancing Instruments Categorized As "Grant Deeds With Release Language" Conveyed Only A Right-of-Way For Railroad Purposes.

The sole disputed issue of title regards the conveyancing instruments contained within Category 3 of the Stipulation Regarding Title Matters, described as "Grant Deeds With Release Language."  There are four instruments that fall within this category: (1) George Thayer grantor, ("Thayer Instrument"), dated July 3, 1862 and recorded in the Cameron County Recorder of Deeds in Book X, page 23; (2) Jonathan Campbell grantor, ("Campbell Instrument"), dated Sept. 3, 1859 and recorded in Book X, page 48; (3) James Piersall grantor, ("Piersall Instrument") dated Sept. 3, 1859 and recorded in Book B, page 10; and (4) John Morrison grantor, ("Morrison Instrument") dated July 10, 1911, and recorded in Book U, page 253.  *See* Joint Exs. 15-18.

The Campbell Instrument, which contains substantially the same language as the Thayer, Piersall and Morrison Instruments, reads as follows:

> KNOW ALL MEN THESE PRESENTS that we Jonathan W. Campbell and George Thayer of Shippen Township Cameron County and State of Pennsylvania for in consideration of the sum of fifty dollars to us in hand paid by the said Philadelphia and Erie Rail Road Company the receipt whereof is hereby acknowledged have granted, bargained, sold, released and transferred and by these presents do grant, bargain, sell and transfer to the said Philadelphia and Erie Railroad Company its successors and assigns a strip of land across that certain piece of land situate in the said Township of Shippen, County of Cameron and State of Pennsylvania adjoining the lands of James Piersoll on the West and other lands of George Thayer on the East and across which the said Company

4

> have located its Railroad, this strip being about seventy rods in
> length more or less, and four rods in width, and such additional
> width and may be necessary at Cuttings and embankments for the
> uses and purposes of said Road - - and further we hereby release
> the said The Philadelphia and Erie Railroad Company its
> successors and assigns, of and from all claims for or right to
> damages which we or either or us may or can have against the said
> the Philadelphia and Erie Rail Road Company its successors and
> assigns in consequence of the location and construction of the said
> Rail Road across the land herein described.  (Joint Ex. 16)

In interpreting instruments of conveyance, the court's "primary object must be to ascertain and effectuate what the parties intended."  *Brookbank v. Benedum-Tress Oil Co.*, 389 Pa. 151, 156-67, 131 A.2d 103, 107 (1959).  In *Brookbank*, the Pennsylvania Supreme Court interpreted a deed containing language substantially similar to the Campbell Instrument.  The *Brookbank* court found, in that case, that the railroad acquired a right of way for railroad purposes and not fee simple title.  In large part, the court based its finding on the fact that deed failed to contain either warranty or habendum clauses, along with the fact that the deed contained language releasing the railroad for liability arising from the location, construction and operation of the railroad.  *Id.* at 162-63, 131 A.2d at 110-11.  Specifically, the court reasoned:

> Bearing on the character of this instrument is the omission of
> habendum, tenendum and warranty clauses. If the railroad intended
> to receive a fee, is it likely that it would not have required of
> [grantors] a warranty of their title? If the railroad intended to
> receive a fee, is it likely that a habendum clause--descriptive of the
> extent of the estate conveyed--would have been omitted? It seems
> inconceivable that the railroad would have omitted these clauses
> from an instrument of conveyance under whose terms they
> intended to receive a fee simple estate.

*Id.*  Here, the Campbell Instrument fails to contain either a warranty clause or a habendum clause.

In addition, the *Brookbank* court noted that the deed contained language releasing the

railroad for all damages arising from the location, construction and operation of the railroad. *Id.* at 163-64, 131 A.2d at 110. The court held that such release language also indicated the conveyance of a railroad right-of-way and not a fee simple interest. "If the railroad were given under this instrument a fee interest in this land the railroad would have a complete right to locate, construct and operate a railroad over the land. The only situation where any liability might accrue to the railroad from the location, construction and operation over this land would be in the event the railroad secured simply a 'right-of-way' over the land." *Id.* In this case, each of the instruments in Category 3 also contains release language releasing the railroad for all damages related to the location and construction of the railroad. *See also Quarry Office Park Assoc. v. Phila. Elec. Co.*, 576 A.2d 358 (Pa. Super. 1990) (finding deed conveyed only a right-of-way for railroad purposes based on factors cited by *Brookbank*).

Finally, the *Brookbank* court found that the instrument was labeled a "release" rather than a deed was another indicia that the grantor intended the instrument to be a release not a fee deed. *Brookbank*, 389 Pa. at 165, 131 A.2d at 111. In this case, the Campbell Instrument is titled "Deed of Release," while the Thayer Deed is titled "Right of Way." The Piersall and Morrison Instruments do not have a title.

Plaintiffs note that the Thayer, Piersall and Morrison Instruments do contain a habendum clause; i.e. "to have and to hold." However, these instruments do not contain a warranty of title clause. Based on the fact that each of the deeds in Category 3 fail to contain a warranty clause and instead contain language releasing the railroad for any damages, the Court should find that in each case the instrument conveyed only a right-of-way for railroad purposes.

6

2.    The Parties Have Stipulated That For Those Parcels In Which The Railroad Acquired Its Interest Through Warranty Deeds Containing "As Long As"Language;  Release Deeds; Condemnation Awards; And Where There Is No Known Conveyancing Instrument These Instruments Conveyed Only A Right-of-Way for Railroad Purposes Or Fee Simple Defeasible To The Railroad.

The parties entered into stipulations concerning the type of property interests obtained by the railroad from the original landowners on the corridor at issue in this case.  These stipulations can be found in Joint Appendix, Exhibit 2, and are titled Stipulations Regarding Title Matters. This stipulation divides the ownership interest originally obtained by the railroad into seven categories.  These categories are as follows: (1) Warranty deeds; (2) Warranty deeds with "as long as" language; (3) Grant deeds with release language; (4) Donation and/or release deeds ; (5) Unrecorded or lost deeds; (6) Condemnation awards; and (7) Parcels with no known conveyance documentation.

First, the parties have stipulated that the deeds in category 2, warranty deeds with "as long as" language conveyed "a fee simple determinable to the railroad company."  Joint Appendix, Ex. 2.  The parties further stipulated that "the reversionary interest in this property has not been extinguished under Pennsylvania law, and that the owner of this reversionary interest on the alleged date of taking is the proper class member with regard to the claim that this parcel has been taken."

Second, the parties have stipulated that two of the deeds contained in category 4 are releases under Pennsylvania law and, as a result, conveyed only a right-of-way for railroad purposes to the railroad.

Third, the parties have stipulated that for parcels in category 6, "the condemnation awards

7

entered with regards to the railroad corridor at issue in this case operated to convey a right-of-way for railroad purposes to the railroad company."  The parties have also stipulated that, in the case of category 6, that the persons who owned fee title the land at the time of the condemnation retained "a possibility of reverter which would ripen into a renewed fee simple ownership if and when the defeasible title in the [railroad] company terminated."  Id.  The parties stipulated that the holders of this possibility of reverter on the alleged date of taking are the proper class members with regard to the claim that the segments of the railroad right-of-way acquired by condemnation have been taken.

Finally, the parties agreed that for parcels with no known conveyance documentation, category 7, "under Pennsylvania law the railroad company is presumed to have acquired a right-of-way for railroad purposes and that the nature and scope of this interest is the same as the railroad company could have acquired by condemnation."  Joint Appendix, Ex. 2.

The parties agree that the persons who owned fee title in the land subject to these railroad rights-of-way on the alleged date of taking are the proper class members with regard to the claim that these parcels have been taken.

    C.      But For The Application Of The Rails-To-Trails Act, A&E Abandoned The Railroad Corridor Under Pennsylvania Law And The Land Would Revert To Grantors' Successors In Title.

        1.      Standard For Abandonment

It is well established under Pennsylvania law that where a railroad acquired "merely a right-of-way or an easement an abandonment by the railroad of its right-of-way would, in legal effect, merely extinguish this encumbrance upon the land . . ."  *Fleck v. Universal-Cyclops Steel Corp.*, 156 A2d. 832, 834 (Pa. 1959), *citing Eagan v, Nagle*, 106 A.2d 222 (Pa. 1954); *McClure*

8

*v. Monongahela Southern Land Co*, 107 A. 386 (Pa. 1919).  As a result, "[a] railroad right of way terminates and the property reverts back to the grantor of the grantor's successors in title when the land ceases to be used for railroad purposes."  *Quarry Office Park Assoc. v. Phila. Elec. Co.*, 576 A.2d 358, 364 (Pa. Super. 1990); *see also Buffalo Township v. Jones*, ("*Buffalo Township II*"), 813 A.2d 659, 664 (Pa. 2003) ("[t]he common law provided that the property interests reverted to the grantor or the grantor's successors upon abandonment of a railroad right-of-way.").

In order for abandonment to occur under Pennsylvania law, "there must be an intention to abandon, accompanied by 'external acts' by which the intention is carried into effect."  *Quarry Office Park Assoc.*, 576 A.2d at 364.  "The determination of whether a railroad has actually abandoned its right of way by acting upon and effecting its expressed intention to abandon is a question for the jury to decide."  *Id.*

According to the court in *Buffalo Township II*, the courts have "considered a myriad of factors" in determining whether abandonment has been effectuated.  It continued that "no single factor alone is sufficient to establish the intent to abandon.  Abandonment must be determined based upon all of the circumstances surrounding the alleged abandonment."  *Buffalo Township II*, 813 A.2d at 665.

2.     But For the Application of the Rails-to-Trails Act, A&E Would Have Been Deemed to Have Abandoned the Rail Corridor as of October 30, 2003.

As stated above, abandonment under Pennsylvania law requires both an intent to abandon, combined with "external acts" by which its intention is carried into effect.  In this case, A&E's intent to abandon is demonstrated by the fact that it filed a Notice of Exemption under 49

9

C.F.R. Part F, seeking authorization to abandon the rail corridor at issue here.  Joint Appendix, Ex. 5.

According to its Application for Abandonment of Line filed with the STB, A&E stated that since 1985 to the present, "there were no customers of common carrier freight services located on the Emporium to St. Mary's rail line."  Joint Ex. 6, "Brief History of Construction & Operation of the Emporium to St. Mary's, PA Rail Line;" STB 074.  A&E also stated that a small amount of interchange traffic with Conrail at Emporium was handled over the line into the 1990's by Allegheny Railroad and later by A&E, but that this service terminated in late 2000, when the Emporium Wood Yard was closed.  *Id.*  In addition, while other railroad carriers operated unit trains over the line under special contract service for International Paper Company, this overhead contract service ended in late 2001 with the closure of International Paper Company's Erie Mill. *Id.*

A&E, also averred that "[n]o service has been provided on this line by Applicant for over two years.  Abandonment of the line will allow Applicant to salvage the tack and materials.  At this time, there appears to be no alternative to the proposed action."  Joint Ex. 6, Environment/Historic Report at 2.

Since it applied for abandonment, A&E has taken the following actions that constitute "external acts" by which the intention to abandon has been carried into effect.  First, A&E ceased operating rail traffic on the right of way.  Second, A&E removed the rails and ties from all but 22 feet of the right of way.  Joint Facts at ¶ 26.

Third, on April 24, 2004, the Railroad filed an application with the Pennsylvania Public Utility Commission ("PUC") for "approval of the suspension of all public crossings at grade

10

between the mileposts 131.0 & 141.9, A& E subdivision, in the City of St. Mary's, Elk County

and in Shippen Township and Emporium Borough, Cameron County."  The twelve (12) at grade

public highway crossings at issue in the PUC proceedings are described in the PUC's order of

May 21, 2004.  Joint Ex. 13 (PUC Order, dated May 21, 2004).

The Pennsylvania PUC granted the Railroad's application.  The PUC made a final

inspection of the work on August 30, 2005, and determined that the suspension of the at-grade

crossings had been satisfactorily completed.  Joint Ex. 14 (PUC Order, dated Sept. 2, 2005).

In determining whether A&E's external acts constitute abandonment, the case of  *Chew v.*

*Com.*, 161 A.2d 621 (Pa. 1960) is particularly instructive.  In *Chew*, the railroad corridor was

initially condemned "for railroad purposes" in 1905.  *Id.* at 622.  The railroad and its successor

operated trains over the corridor until April 1955, when the railroad sought to abandon railway

service and to substitute bus service in its stead.  *Id.*  Before the PUC could rule on the railroad's

application for abandonment, "the Commonwealth of Pennsylvania condemned the property for

*highway purposes.*"  *Id.* (emphasis in original).

In determining whether abandonment had occurred at the time of condemnation, the

Supreme Court noted that before the Commonwealth condemned the property the railroad had

applied to the PUC for authorization to abandon rail service and that since "the resolution

adopted by the railroad company specifically declared that bus service was to take the place of

rail service, and the later was to be abandoned, it could only naturally follow that the rail service

was to cease completely."  *Id.* at 624.  As a result, the court held that "the abandonment by the

railroad of its right of way, was, indeed, imminent and probable at the time of condemnation."

*Id.* at 624.

11

In this case, as in *Chew*, the railroad took affirmative steps to abandon rail service on the corridor.  A&E's application for abandonment, combined with its cessation of rail traffic and its removal of the rails, ties and at-grade crossings, is powerful evidence that A&E abandoned the corridor for railroad purposes.  Factually, it would be impossible for A&E to resume rail traffic on the corridor without rails or ties.  Equally important is A&E's decision to abandon and dismantle its at-grade crossings.  This act demonstrates that A&E has no intention of resuming rail service on this corridor.

Defendant may argue that A&E's removal of its rails and ties is consistent with the railbanking of the corridor, and thus does not constitute abandonment.  This argument was rejected, in a similar case, by the Court of Federal Claims in *Toews v. United States*, 53 Fed. Cl. 58 (2002).  In *Toews*, the court held that the railroad's "petition to abandon, coupled with the granting of the permit (albeit subject to the Rails to Trails designation), the removal of the track, and the creation of the trail makes it clear that the original use is at an end, with no remote prospect of resuscitation."  *Id.* at 62 (emphasis added).  As a result, the court held that under California law the corridor had been abandoned.  *See also Glosemeyer*, 45 Fed. Cl. at 777 ("When a railroad's application for abandonment states that there is 'no feasible alternative' to abandonment, that it seeks to 'physically' abandon a rail line, or that it is 'not possible to operate [a] line profitably in the future,' a reader is left with no choice but to conclude that the railroad intends to abandon the rail line.").

Thus, the Court should find, that but for the application of the Trails Act, A&E would have been deemed to have abandoned the right-of-way by the date of the alleged taking, and that such land would have reverted back to Plaintiffs and Class members.

12

D.     Plaintiffs Are Entitled To Summary Judgment On Liability For Those Parcels In
Which The Railroad Acquired Its Interest Through Condemnation Proceedings.

1.     The Railroad Acquired Only An Easement or Conditional Fee for Railroad
Purposes Where It  Acquired Parcels by Condemnation Under the Railroad
Act of 1849.

One of the principal issues presented by the parties' cross motions for summary judgment

is the effect of the railroad's condemnation of a sizeable portion of the corridor through the

auspices of the Railroad Act of 1849.  According to the stipulation between the parties, the

Phila. and Erie Railroad was incorporated by Act of April 3, 1837, P.L. 170 under the name of

Sunbury & Erie Railroad Company.  Pursuant to the Act of March 27, 1852, P.L. 186, sections

10 and 11 of the General Railroad Act of 1849, P.L. 439, (the "Railroad Act of 1849"),

regulating the acquisition of property to construct and maintain the railroad, were extended to the

Phila. and Erie.  *See Bierly v. Phila. & Erie R.R. Co.*, 17 Pa. D. 115, 1907 WL 3451 (Phila. Ct.

Common Pleas 1907).  *See* Joint Statement of Facts at ¶ 3.

In determining the  issue of what property interest was conveyed pursuant to

condemnations under the Railroad Act of 1849, the Supreme Court of Pennsylvania's decision in

*Brookbank v. Benedum-Trees Oil Co.*, 131 A.2d 103 (Pa. 1957), is directly on point.  In

*Brookbank*, plaintiff owned a parcel of land over which the B & O Railroad operated a railroad

until 1942.  Plaintiff claimed that the railroad had simply "a 'right of way' across his land for

railroad purposes and, upon the cessation of its use for railroad purposes in 1942, the land within

the 'right of way' reverted to him as the present owner of the fee."  *Id.* at 105-06.

The railroad's predecessor in title, the Susquehanna and Southern Railroad Company,

obtained the parcel from plaintiffs' predecessor in title through a "release" executed in January of

13

1903.  The court reasoned, however, that "[t]o effect a more complete understanding of the intent

of the parties . . . reference must be made to the factual background and the circumstances

leading up to the execution of this agreement."  *Id.* at 110-11.  The court noted that in 1902 the

railroad had surveyed the route and had adopted the route by resolution of its board of directors.

*Id.*  These two steps were taken by the railroad "to acquire this land by eminent domain."  *Id.*

According to the court, the "acquisition of land" pursuant to the Railroad Act of 1849

"provides three steps: (1) a survey of the route; (2) adoption of the route by resolution of the

board of directors of the railroad company and (3) payment of compensation to the landowner."

*Id.*  The question posed in *Brookbank* was whether the release agreement constituted "the

accomplishment of the third step by providing compensation to the landowner and a release of

the railroad company or was it an acquisition of the land by purchase?"  *Id.*  The court, after

reviewing the terms of the release, held that the release agreement "simply constituted the final

step in the acquisition of the strip of land by eminent domain."  *Id.* at 111.

The Supreme Court then turned to the nature of the interest obtained by the railroad under

the Act of 1849.  The court stated that interest obtained by the railroad by eminent domain under

the Act of 1849, "was unknown at common law."  *Id.* at n.23.  The court noted that "[s]ome of

the early cases refer to it as an easement, while later cases call it a base or conditional fee."  *Id.*

Whether the interest acquired by condemnation under the 1849 Act is called an easement

or a base or conditional fee, "[a]ll that the railroad acquired was a 'right of way' for railroad

purposes."  *Id.* at 111.  The court stated that this interest "was not an absolute, but a defeasible

fee and it carried with it the right to the use of the surface and so much of the subsurface as was

necessary to support the roadbed."  *Id.*  at 112.  The court concluded that "<u>when the strip of land</u>

14

ceased to be used for the purpose acquired, the rights of the railroad ceased and reverted to the owner of the fee." *Id.* (emphasis added).

The holding of the Supreme Court of Pennsylvania in *Brookbank*, is but one of several decisions in a long line of Pennsylvania jurisprudence holding that a railroad obtains only a limited 'right of way' for railroad purposes through the Railroad Act of 1849.   For example, in *Western Pa. R.R. Co. v. Johnston*, 59 Pa. 290, 1869 WL 7468 (1868) the Supreme Court of Pennsylvania analyzed the effect of the condemnation of property under the Act of 1849 and noted that, "[u]nlike the laws under which the state constructed her public works, and by virtue of which she took a fee simple estate in the land, the Act of 1849 confers only a right to survey and locate the route for a railroad, and to enter into, and upon and occupy all land on which its railroad, depots, etc., may be located . . ." *Id.* at * 4.  According to the *Johnston* court, "[t]he character of the interest of the corporation in the land so taken and used for railroad purposes . . . is an easement merely upon the land, a right of way or passage, with such an occupancy as is necessary to give this right its effect; that is, in constructing, repairing and using the works adapted to the purpose of passage." *Id.* at * 4.  Similarly, in *Fleck v. Universal-Cyclops Steel Corp.*, 156 A2d. 832, 834 (Pa. 1959), the Supreme Court of Pennsylvania held that, "[i]t was recognized early in this Commonwealth that a conveyance or a taking by eminent domain of a right-of-way usually conveys or creates only an easement."

In this case, as in *Brookbank*, the Philadelphia and Erie Railroad obtained its interests in portions of the former railroad corridor through condemnations pursuant to the Act of 1849. Based upon the holdings of *Brookbank* and *Fleck*, "all that the railroad acquired was a 'right of way' for railroad purposes."  As such, according to *Brookbank*, "when the strip of land ceased to

be used for the purpose acquired, the rights of the railroad ceased and reverted to the owner of the fee."

In this case, Plaintiffs and Class members are the successors in interest to the original fee owners.  Under Pennsylvania law, but for the application of the Trails Act, upon the railroad's cessation of the corridor for "railroad purposes," the railroad's interest, whether it is termed an easement or conditional fee, would have been extinguished and the land would have reverted to Plaintiffs and Class members.

2.    The Railroad's Title to "Parcels With No Known Conveyance Documentation" Is The Same As If The Railroad Had Obtained The Parcel Through Condemnation Proceedings.

Significant portions of the corridor were acquired by the Railroad without any known conveyancing instrument.  Under Pennsylvania law, the Railroad's interest in such parcels is the same as if the Railroad had acquired the parcel through condemnation proceedings.

Notably, under Pennsylvania law, a railroad may not acquire land by adverse possession. "[T]here is no doctrine more firmly imbedded in the law of Pennsylvania than that land embraced within a railroad right of way is held for public purposes and for that reason cannot be acquired by adverse possession."  *Olympian Sportsmen, Inc. v. Erie-Lackawannna Ry Co.*, 47 D. & C.2d 90, 92 (Mercer Ct. Common Pleas 1968), *citing Conwell v. Phila. & R. Ry. Co.*, 88 A. 417 (Pa. 1913).

In this case, the parties stipulated that under Pennsylvania law the Railroad is presumed to have acquired a right-of-way for railroad purposes and that the nature and scope of this interest is the same as the railroad company could have acquired by condemnation.  *See* Stipulations Regarding Title.  As a result, but for the application of the Trails Act, upon the railroad's

16

cessation of the corridor for "railroad purposes," the railroad's interest in parcels with no known conveyancing instruments would have been extinguished and the land would have reverted to Plaintiffs and Class members.

      E.      The Government Is Liable For A Taking Of Plaintiffs' And Class Members' Property.

Having established in the preceding sections of this Memorandum that railroad easements at issue in this case would have been extinguished but for the application of the Trails Act, the final issue is whether the Government is liable for a taking under the Fifth Amendment.

In *Presault II*, 100 F.3d 1525 (Fed. Cir. 1996), after determining that but for the application of the Trails Act, plaintiffs would have had possession of the right-of-way under Vermont law, the Federal Circuit held that "[t]he taking of possession of the lands owned by the Presaults for use as a public trail was in effect a taking for a new easement for that new use, for which the landowners are entitled to compensation." 100 F.3d at 1550. Similarly, in *Glosemeyer*, the Court of Federal Claims held that but for the application of the Trails Act, "the plaintiffs would have been seised in their lands without any restrictions" and that "we have little difficulty finding that a taking has occurred." The *Glosemeyer* court reasoned that, "[s]olely because of the Rails-to-Trails Act, the plaintiffs' lands are now burdened by new easements - for recreational trails. Whereas previously the plaintiffs could exclude all but the railroads from use of the right-of-ways, now the public at large has access. This is a physical taking of the plaintiffs' property." 45 Fed. Cl. at 781.

The United States Supreme Court held in *Lorettor v. Teleprompter CATV Corp.*, 458 U.S. 419, 435-36 (1982), that "[t]he power to exclude has traditionally been considered one of the

most treasured strands in an owner's bundle of rights.  The permanent physical occupation of

property forever denies the owner any power to control the use of the property."  That is exactly

what has occurred in this case.  "Through the agreements consummated between the railroads

and the trail providers, trail easements have been imposed, essentially in perpetuity, contrary to

state law and simply be federal fiat."  *Glosemeyer*, 45 Fed. Cl. at 782.

**IV. CONCLUSION**

For the reasons stated above, Plaintiffs respectfully request that the Court grant Plaintiffs'

Motion for Partial Summary Judgment on Liability.


Respectfully submitted,



_____     /s/David A. Cohen_____
                                             DAVID A. COHEN
                                             PA Bar I.D. No. 54342

                                             THE CULLEN LAW FIRM
                                             1101 30th Street, N.W.,
                                             Suite 300
                                             Washington, D.C. 20007
                                             (202) 944-8600

Dated: December 8, 2006


18

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 8th day of December, 2006, the foregoing Plaintiffs' Memorandum in Support of Plaintiffs' Motion for Partial Summary Judgment was electronically filed with the Clerk of the Court using the CM/ECF system, which, in turn, forwarded the same to the following counsel of record.

Kristine S. Tardiff, Esq.
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
53 Pleasant Street, 4th Floor
Concord, NH 03301
Kristine.Tardiff@usdoj.gov

/s/David A. Cohen

19