UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

| | |
|---|---|
| ROBERT TROHA and FREDERICK BIGNALL on behalf of themselves and all others similarly situated,<br><br>      Plaintiff,<br>vs.<br><br>THE UNITED STATES OF AMERICA,<br><br>      Defendant. | Civil Action No. 05-191-E |

**JOINT STATEMENT OF FACTS**

The parties hereby submit the following statement of facts. The parties have stipulated to all of the factual statements recited herein for the purposes of facilitating resolution of the parties' cross-motions for partial summary judgment on liability. These stipulations are expressly based on facts and information available and known to the parties at this time, and are subject to modification or revocation by either party should additional factual information come to light that affects the accuracy fo these stipulations.

**Historical Background and Conrail's Acquisition of the Subject Properties:**

1. This case involves a railroad right-of-way formerly operated by Allegheny & Eastern Railroad, Inc. ("A&E" or "Railroad") in Cameron and Elk Counties, Pennsylvania.[1]

---

[1] Unless otherwise indicated, the parties' use of the terms "A&E" and "Railroad" herein encompasses A&E and all of its predecessors-in-title in connection with the subject right-of-way.

2. The segment of the line at issue in this case extends from a point north of St. Mary's (milepost 131) in Elk County to a point in the southeastern corner of Emporium in Cameron County (milepost 149.9). The total length of the right-of-way at issue is 18.9 miles long.

3. The railroad corridor at issue was constructed in 1864 by the Philadelphia and Erie Railroad Company ("Phila & Erie"). (See Joint Ex. 6, "Brief History of Construction & Operation of the Emporium to St. Mary's, PA Rail Line;" STB 074). The Phila. and Erie was incorporated by Act of April 3, 1837, P.L. 170 under the name of Sunbury & Erie Railroad Company. Pursuant to the Act of March 27, 1852, P.L. 186, sections 10 and 11 of the General Railroad Act of 1849, P.L. 439, (Joint Ex. 1) regulating the acquisition of property to construct and maintain the railroad, were extended to the Phila. and Erie. *See Bierly v. Phila. & Erie R.R. Co.*, 17 Pa. D. 115, 1907 WL 3451 (Phila. Ct. Common Pleas 1907).

4. The Phila. and Erie Railroad was merged into The Pennsylvania Railroad Company in 1907. The New York Central Railroad Company merged into The Pennsylvania Railroad and the surviving entity became known as the Penn Central Transportation Company. In 1976, Penn Central conveyed the subject rail line to Consolidated Rail Corporation ("Conrail"). Conrail, in turn, conveyed the rail line to Allegheny Railroad Company (a subsidiary of Hammermill Paper Company) in 1985. In 1992 the Allegheny Railroad Company conveyed the rail line to Allegheny & Eastern Railroad. (See Historic Report).

5. A&E acquired its ownership interest in the lands that comprise the portion of the right-of-way at issue in this case through a number of different instruments of conveyance. These

instruments were reviewed by the parties and then assigned to one of the following categories:

>Category 1 – Warranty Deeds
>
>Category 2 – Warranty Deed with "As Long As" Language
>
>Category 3 – Grant Deeds with Release
>
>Category 4 – Donation and/or Release Deeds
>
>Category 5 – Unrecorded or Lost Deeds
>
>Category 6 – Condemnation Awards
>
>Category 7 – Parcels With No Known Conveyance Documentation

The Stipulated List of Conveyance Categories agreed to by the parties is included in the Joint Appendix as Joint Ex. 3. This list identifies each parcel of land originally acquired by the Railroad by category according to the type of deed or other instrument of conveyance that was used to convey that parcel, or an interest in that parcel, to the Railroad. Id.

6. The parties have stipulated as to the ownership interest acquired by the Railroad, under Pennsylvania law, for each of the conveyance categories identified above in paragraph 5, except category 3. The parties' Stipulations Regarding Title Matters is included in the Joint Appendix as Joint Ex. 2.

**Administrative Proceedings Before the ICC in Docket No. AB-854X:**

7. On September 11, 2003, A&E filed with the Surface Transportation Board ("STB") a notice under 49 C.F.R. Subpart F – Exemption Abandonments, seeking authorization to abandon approximately 18.9 miles of its rail line in Elk and Cameron Counties,

       Pennsylvania. Joint Ex. 5. The STB docket number assigned to this matter was AB-854X.

8. Notice of the exemption was served on October 1, 2003, and published in the Federal Register on September 30, 2003. *See* 68 Fed. Reg. 56377-78. This exemption, which authorized the abandonment of the rail line segment in question, was to become effective on October 31, 2003.

9. On October 14, 2003, the County of Cameron, Pennsylvania (Cameron County), filed a request for issuance of a Notice of Interim Trail Use ("NITU") for the rail line under the National Trails System Act, 16 U.S.C. § 1247(d) ("Trails Act") and further requesting imposition of a public use condition under 49 U.S.C. § 10906. Joint Ex. 7 (STB 0168-71. In addition, in accordance with 16 U.S.C. § 1247(d) and 49 C.F.R. § 1152.29, Cameron County filed a statement of willingness to assume financial responsibility for the rail line. *Id.*

10. Also on October 14, 2003, the County of Elk, Pennsylvania (Elk County), filed a request for issuance of a Notice of Interim Trail Use ("NITU") for the rail line under the National Trails System Act, 16 U.S.C. § 1247(d) ("Trails Act") and further requesting imposition of a public use condition under 49 U.S.C. § 10906. Joint Ex. 8 (STB 0164-67) In addition, in accordance with 16 U.S.C. § 1247(d) and 49 C.F.R. § 1152.29, Elk County filed a statement of willingness to assume financial responsibility for the rail line. *Id.*

11. On October 28, 2003, A & E filed a letter with the STB indicating that it was willing to negotiate with Elk and Cameron Counties regarding the potential railbanking and interim trail use of the subject right-of-way. Joint Ex. 9 (STB 0172-73).

12. On October 30, 2003, the STB served a decision and NITU for the 18.9-mile rail line segment. Joint Ex. 10 (STB 0203-06). In this decision, the STB reopened the exemption proceedings and modified the notice of exemption served on October 30, 2003, by allowing A&E and the Counties 180 days to negotiate a railbanking and interim trail use agreement, and by allowing other parties that same period of time to negotiate an acquisition of the line for public use. Id.

13. Subject to the conditions set forth in the NITU, the decision provided that "A & E may discontinue service and salvage track and related materials." Joint Ex.10 (NITU, p. 3).

14. The NITU further provides that interim trail use/rail banking is subject to the future restoration of rail service and to the user's continuing to meet the financial obligations for the right-of-way. Joint Ex. 10 (NITU, p. 4).

15. The NITU provides that if an agreement for interim trail use/rail banking is reached during the 180-day period, interim trail use may be implemented, and if no such agreement is reached during that time, A&E may fully abandon the line. Joint Ex. 10 (NITU, p. 4).

16. The negotiating period set forth in the NITU served on October 30, 2003, was subsequently extended at the request of the parties by STB decisions served on: April 12, 2004; July 22, 2004; October 25, 2004; April 22, 2005; July 22, 2005; October 21, 2005; April 21, 2006; and October 13, 2006. Joint Ex. 11.

17. Pursuant to the decision of the STB served on October 13, 2006, the NITU negotiating period is extended for 90 days, until January 13, 2007.

18. On November 7, 2006, Elk County filed a notice with the STB stating that the Elk County Commissioners adopted a motion authorizing the substitution of the West Creek Recreational Trial Association ("WCRTA") for the County of Elk as the trail sponsor. Joint Ex. 12. On November 15, 2006, A&E filed a response stating that it is agreeable to Elk County's request to substitute WCRTA as the trail user provided that Elk County and WCRTA fully comply with the requirements of 49 C.F.R. 1152.290(f).

19. As of the date of these stipulations, the negotiating period has not yet expired and no agreement regarding railbanking and interim trail use has been reached.[2]

**Background Regarding the Use of the Subject Right-of-Way**:

20. From the time of acquisition of the line "by Allegheny Railroad Company in 1985 to the present, there were no customers of common carrier freight services located on the Emporium to St. Mary's rail line." Joint Ex. 6 ("Brief History of Construction & Operation of the Emporium to St. Mary's, PA Rail Line;" STB 074) (filed as Exhibit B to A&E Environmental/Historic Report, dated Aug. 8, 2003).

21. A small amount of interchange traffic with Conrail at Emporium was handled over the line into the 1990's by Allegheny Railroad and later by A&E. Limited exempt contract (non-common carrier) freight service was provided thereafter by other carriers to Hammermill Paper Company (later International Paper Company) at Hammermill's Emporium Wood Yard. This service terminated in late 2000, when the Emporium Wood Yard was closed. *Id.*

---

[2] The parties anticipate filing additional factual stipulations indicating whether the negotiating period is further extended and, if so, whether a railbanking and interim trail use agreement is reached.

22. Other railroad carriers operated unit trains over the line under special contract service for International Paper Company. This overhead contract service ended in late 2001 with the closure of International Paper Company's Erie Mill. In its Environmental/Historic Report, filed with the STB on August 8, 2003, A&E further stated that "[t]here is not currently any overhead traffic on the line." *Id.*

23. In its Environmental/Historic Report, filed with the STB on August 8, 2003, A&E stated that "[n]o service has been provided on this line by Applicant for over two years. Abandonment of the line will allow Applicant to salvage the track and materials. At this time, there appears to be no alternative to the proposed action." Joint Ex. 6, Environmental/Historic Report at 2.

24. In proposing to abandon the line and to salvage the track materials, A&E stated in its Environmental/Historic Report that "[a]ll track removal work will be done on top of the road bed. Nothing beneath the road bed will be disturbed." Id. at 13. In addition, A&E stated it does not currently intend to alter or remove certain structures along the right-of-way, including a stone inlet archway, four deck bridges and culverts. Id. at 12-14 and Exhibit G (STB0137).

25. In its Notice for Exemption of Abandonment, filed with the STB on September 11, 2003, A&E stated that "[n]o local traffic has moved over the line for at least two years, and overhead traffic, if any, could be rerouted over other lines." Joint Ex. 13 (Notice of Exemption; STB0144-160). A&E further stated in this Notice that it "proposes to consummate the abandonment on or after October 30, 2003."

26. A&E removed all of the rails and ties from the rail line at issue in this case by the end of 2005 with the exception of approximately 22 feet of track near milepost 131 in St. Mary's (Elk County), which is the end of the subject line that is adjacent to A&E's active rail line.

27. On April 24, 2004, the Buffalo and Pittsburgh Railroad, formerly known as Allegheny & Eastern Railroad, Inc., filed an application with the Pennsylvania Public Utility Commission ("PUC") for "approval of the suspension of all public crossings at grade between the mileposts 131.0 & 141.9, A& E subdivision, in the City of St. Mary's, Elk County and in Shippen Township and Emporium Borough, Cameron County." The twelve (12) at grade public highway crossings at issue in the PUC proceedings are described in the PUC's order of May 21, 2004. Joint Ex. 13 (PUC Order, dated May 21, 2004).

28 The Pennsylvania PUC granted the Railroad's application. The PUC made a final inspection of the work on August 30, 2005, and determined that the suspension of the at-grade crossings had been satisfactorily completed. Joint Ex. 14 (PUC Order, dated Sept. 2, 2005).

Respectfully submitted,

|  |  |
|---|---|
|  | SUE ELLEN WOOLRIDGE |
|  | Assistant Attorney General |
|  | Environment & Natural Resources Division |
| s/David A. Cohen | s/Kristine S. Tardiff |
| DAVID A COHEN | KRISTINE S. TARDIFF |
| PA Bar I.D. No. 54342 |  |
| Counsel of Record for Plaintiffs | Counsel of Record for Defendant |
| THE CULLEN LAW FIRM | United States Department of Justice |
| 1101 30th Street, N.W., Suite 300 | Environment & Natural Resources Division |
| Washington, D.C. 20007 | Natural Resources Section |
| TEL: (202) 944-8600 | 53 Pleasant Street, 4th Floor |
| FAX: (202) 944-8611 | Concord, NH 03301 |
|  | TEL: (603) 230-2583 |
|  | FAX: (603) 225-1577 |

OF COUNSEL:
EVELYN KITAY, Attorney
Surface Transportation Board
Office of General Counsel
Washington, D.C. 20423