# EXHIBIT 10

34081                     SERVICE DATE - OCTOBER 30, 2003
DO

SURFACE TRANSPORTATION BOARD

DECISION AND NOTICE OF INTERIM TRAIL USE OR ABANDONMENT

STB Docket No. AB-854X

ALLEGHENY & EASTERN RAILROAD, INC.–ABANDONMENT EXEMPTION–IN ELK AND CAMERON COUNTIES, PA

Decided: October 28, 2003

   Allegheny & Eastern Railroad, Inc. (A&E), filed a notice of exemption under 49 CFR 1152 Subpart F–Exempt Abandonments to abandon an 18.9-mile line of railroad between milepost 131, near St. Marys, in Elk County, and milepost 149.9, southeast of Emporium, in Cameron County, PA. Notice of the exemption was served on October 1, 2003, and published in the Federal Register on September 30, 2003 (68 FR 56377-78). The exemption is scheduled to become effective on October 31, 2003.

   The Board's Section of Environmental Analysis (SEA) served an environmental assessment (EA) in this proceeding on October 6, 2003. In the EA, SEA states that the National Geodetic Survey (NGS) has identified 30 geodetic station markers that may be affected by the proposed abandonment. Therefore, SEA recommends that A&E consult with NGS and provide NGS with 90 days' notice prior to disturbing or destroying any geodetic markers. SEA also states that the Pennsylvania Department of Environmental Protection (PADEP) has submitted comments stating that PADEP's regulations require a permit for the removal or retention of any stream crossings. Therefore, SEA recommends that a condition be imposed requiring A&E to consult with PADEP concerning the salvage or retention of abandoned stream crossings. Finally, SEA states that the Pennsylvania Historical and Museum Commission has not completed its review of the potential impact of this project on historic resources. Accordingly, SEA recommends that a condition be imposed requiring A&E to retain its interest in and take no steps to alter the historic integrity of all sites and structures on the right-of-way until the completion of the section 106 process of the National Historic Preservation Act, 16 U.S.C. 470f (NHPA).

   Comments to the EA were due by October 20, 2003. No comments were received by the due date. Accordingly, the conditions recommended by SEA in the EA will be imposed.

   SEA also indicated in the EA that the right-of-way may be suitable for other public use following abandonment. On October 14, 2003, the County of Cameron, PA (Cameron County), filed a request for issuance of a notice of interim trail use (NITU) for the entire line under the National Trails System Act, 16 U.S.C. 1247(d) (Trails Act), and for a public use condition under 49 U.S.C. 10905, in order to negotiate with A&E for acquisition of the right-of-way for use as a recreational trail. Cameron County requests that A&E be barred from removing or destroying

STB0203

STB Docket No. AB-854X

any potential trail-related structures, such as bridges, trestles, culverts and tunnels, for a 180-day period from the effective date of the abandonment. Cameron County states that this time is needed because it has not had an opportunity to assemble or to review title information, complete a trail plan or commence negotiations with A&E. Cameron County also submitted a statement of willingness to assume financial responsibility for the management of, for any legal liability arising out of the transfer or use of (unless the user is immune from liability, in which case it need only indemnify the railroad against any potential liability), and for payment of any and all taxes that may be levied or assessed against, the right-of-way, as required at 49 CFR 1152.29, and has acknowledged that the use of the right-of-way for trail purposes is subject to future reconstruction and reactivation for rail service.

Also, on October 14, 2003, the County of Elk, PA (Elk County), filed a request for a public use condition under 49 U.S.C. 10905, in order to negotiate with A&E for acquisition of the right-of-way for use as a recreational trail. Elk County requests that A&E be barred from removing or destroying any potential trail-related structures, such as bridges, trestles, culverts and tunnels, for a 180-day period from the effective date of the abandonment. Elk County states that this time is needed because it has not had an opportunity to assemble or to review title information, complete a trail plan or commence negotiations with A&E. Elk County also indicates its support for Cameron County's request for a NITU.

Because Cameron County's request complies with the requirements of 49 CFR 1152.29 and A&E is willing to negotiate for trail use, a NITU will be issued. The parties may negotiate an agreement during the 180-day period prescribed below. If the parties reach a mutually acceptable final agreement, no further Board action is necessary. If no agreement is reached within 180 days, A&E may fully abandon the line, provided the conditions imposed in this decision are met. See 49 CFR 1152.29(d)(1). Use of the right-of-way for trail purposes is subject to restoration for railroad purposes.

As an alternative to interim trail use under the Trails Act, the right-of-way may be acquired for public use as a trail under 49 U.S.C. 10905. See Rail Abandonments–Use of Rights-of-Way As Trails, 2 I.C.C.2d 591, 609 (1986). Under section 10905, the Board may prohibit the disposal of rail properties that are proposed to be abandoned and are appropriate for public purposes for a period of not more than 180 days after the effective date of the decision approving or exempting the abandonment.

To justify a public use condition, a party must set forth: (i) the condition sought; (ii) the public importance of the condition; (iii) the period of time for which the condition would be effective; and (iv) justification for the imposition of the period of time requested. See 49 CFR 1152.28(a)(2). Cameron County and Elk County have satisfied these requirements and, therefore, a 180-day public use condition will be imposed commencing with the effective date of the exemption.

STB0204

STB Docket No. AB-854X

When the need for interim trail use/rail banking and public use is shown, it is the Board's policy to impose both conditions concurrently, subject to the execution of a trail use agreement. If a trail use agreement is reached on a portion of the right-of-way, A&E must keep the remaining right-of-way intact for the remainder of the 180-day period to permit public use negotiations. Also, a public use condition is not imposed for the benefit of any one potential purchaser, but rather to provide an opportunity for any interested person to acquire the right-of-way that has been found suitable for public purposes, including trail use. Therefore, with respect to the public use condition, A&E is not required to deal exclusively with Cameron County and Elk County, but may engage in negotiations with other interested persons.

As conditioned, this decision and notice will not significantly affect either the quality of the human environment or the conservation of energy resources.

It is ordered:

1. This proceeding is reopened.

2. Upon reconsideration, the notice served on October 1, 2003, and published in the Federal Register on September 30, 2003, exempting the abandonment of the line described above, is modified to the extent necessary to implement interim trail use/rail banking and to permit public use negotiations as set forth below, for a period of 180 days commencing from the October 31, 2003 effective date of the exemption (until April 28, 2004), and subject to the conditions that A&E shall: (1) consult with NGS and provide NGS with 90 days' notice prior to disturbing or destroying any geodetic markers; (2) consult with PADEP concerning the salvage or retention of abandoned stream crossings; and (3) retain its interest in and take no steps to alter the historic integrity of all sites and structures on the right-of-way until the completion of the section 106 process of the NHPA.

3. Consistent with the public use and interim trail/rail banking conditions imposed in this decision and notice, A&E may discontinue service and salvage track and related materials. A&E shall otherwise keep intact the right-of-way underlying the tracks, including bridges, trestles, culverts, and tunnels, for a period of 180 days to enable any state or local government agency, or other interested person, to negotiate the acquisition of the line for public use.

4. If an interim trail use/rail banking agreement is executed before expiration of the 180-day period specified above, the public use condition will expire to the extent that the trail use/rail banking agreement covers the same line.

5. If an interim trail use/rail banking agreement is reached, it must require the trail user to assume, for the term of the agreement, full responsibility for management of, for any legal liability arising out of the transfer or use of (if the user is immune from liability, it need only

3

STB Docket No. AB-854X

indemnify the railroad against any potential liability), and for the payment of any and all taxes that may be levied or assessed against, the right-of-way.

6. Interim trail use/rail banking is subject to the future restoration of rail service and to the user's continuing to meet the financial obligations for the right-of-way.

7. If interim trail use is implemented, and subsequently the user intends to terminate trail use, it must send the Board a copy of this decision and notice and request that it be vacated on a specified date.

8. If an agreement for interim trail use/rail banking is reached by April 28, 2004, interim trail use may be implemented. If no agreement is reached by that time, A&E may fully abandon the line.

9. This decision is effective on its service date.

By the Board, David M. Konschnik, Director, Office of Proceedings.

Vernon A. Williams
Secretary

STB0206