IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROBERT TROHA and FREDERICK BIGNALL, )
on behalf of themselves and all others )
similarly situated, )
　 )
    Plaintiffs, )
　 )
    v. )  Civil Action No. 05-191 E
　 )
THE UNITED STATES OF AMERICA, )
　 )
    Defendant. )
_____)

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS CROSS-MOTION
FOR SUMMARY JUDGMENT AND IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

    SUE ELLEN WOOLDRIDGE
    Assistant Attorney General
    Environment & Natural Resources Division

    KRISTINE S. TARDIFF  (NH10058)
    United States Department of Justice
    Environment & Natural Resources Division
    Natural Resources Section
    53 Pleasant Street
    Concord, NH 03301
    TEL: (603) 230-2583/FAX: (603) 225-1577

    KELLE S. ACOCK (TX24041991)
    United States Department of Justice
    Environment & Natural Resources Division
    Natural Resources Section
    P.O. Box 663
    Ben Franklin Station
    Washington, DC 20044-0663

OF COUNSEL:
ELLEN D. HANSON, General Counsel
EVELYN KITAY, Attorney
Surface Transportation Board
Office of the General Counsel

Washington, D.C.20423                                    Dated: January 18, 2007

## TABLE OF CONTENTS

I.    INTRODUCTION AND SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   FACTUAL AND PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      A.    Summary Judgment Must Be Granted in Favor of the United
            States For Those Parcels in Which the Railroad Acquired a
            Fee Simple Absolute Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      B.    Pennsylvania Law Makes Clear Even Where The Railroad Acquired
            Only a Right-of-Way for Railroad Purposes, There Has Been No Taking of
            Plaintiffs' Reversionary Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

            1.    The Public Nature of the Subject Right-of-Way and
                  the Commonwealth's Retained Interest in the
                  Right-of-Way Are Limitations on Plaintiffs' Title
                  That Preclude Their Takings Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

                  a.    The Nature and Scope of the Subject Railroad
                        Right-of-Way . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

                  b.    Railbanking and Interim Trail Use Are Consistent
                        With and Do Not Infringe Upon Plaintiffs'
                        Reversionary Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

            2.    The Scope of the Subject Right-of-Way is Broad Enough
                  to Allow Railbanking and Interim Trail Use . . . . . . . . . . . . . . . . . . . . 15

                  a.    Railbanking is a Railroad Use or Purpose . . . . . . . . . . . . . . . . 15

                  b.    Interim Trail Use Under the Trails Act Furthers
                        Railroad Purposes and Serves a Public
                        Transportation Purpose . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

            3.    The Subject Right-of-Way Has Not Been Abandoned Under
                  State Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

                  a.    Abandonment Requires Intent Plus Affirmative Acts . . . . . . . . 20

                  b.    A&E's Actions Demonstrate an Unequivocal
                        Intent to Preserve the Right-of-Way . . . . . . . . . . . . . . . . . . . . . 21

c.    A&E's Acts Are Consistent With Preserving the Right-of-Way . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

d.    Plaintiffs' Reliance on <u>Chew v. Commonwealth</u> is Misplaced . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

4.    Under The Doctrine of Shifting Public Uses, the Shift From Active Rail Use to Railbanking and Interim Trail Use Does Terminate The Easements . . . . . . . . . . . . . . . . . . . . . . . 28

IV.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

# TABLE OF AUTHORITIES

## CASES

Amaliksen v. United States,
    55 Fed. Cl. 167 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Barney v. Burlington N. R.R.,
    490 N.W.2d 726 (S.D. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Birt v. STB,
    90 F.3d 580 (D.C. Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 26

Buffalo Township v. Jones,
    778 A.2d 1269 (Pa. Commw. Ct. 2001), aff'd, 813 A.2d 659 (Pa. 2002),
    cert. denied, 540 U.S. 821 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 25

Burnier v. Dept. of Envtl. Resources,
    611 A.2d 1366 (Pa. Commw. Ct. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 25

Caldwell v. United States,
    57 Fed. Cl. 193 (2003), aff'd on other grounds, 391 F.3d 1226 (Fed. Cir. 2004),
    cert. denied, 126 S. Ct. 366 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Cherokee Nation v. S. Kansas Ry.,
    135 U.S. 641 (1890). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Chevy Chase Land Co. v. United States,
    37 Fed. Cl. 545 (1997), aff'd, 230 F.3d 1375 (Fed. Cir. 1999),
    cert. denied, 531 U.S. 957 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Chevy Chase Land Co. v. United States,
    733 A.2d 1055 (Md. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 23, 24

Chew v. Commonwealth,
    161 A.2d 621 (Pa. 1960). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Citizens Against Rails-To-Trails v. STB,
    267 F.3d 1144 (D.C. Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Conwell v. Philadelphia & R.R. Co.,
    241 Pa. 172, 88 A. 417 (1913) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Erie & North-East R.R. v. Casey,
    26 Pa. 287, 1856 WL 7092, 19 (1856). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 13

Glass v. Goeckel,
    703 N.W.2d 58 (Mich. 2005), cert. denied, 126 S. Ct. 1340 (2006). . . . . . . . . . . . . . . . 7

Higbee Corp. v. Kennedy,
    428 A.2d 592 (Pa. Super. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

In re Condemnation by Lancaster County,
    909 A.2d 913 (Pa. Cmwlth. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 25

In re: Condemnation by Redevelopment Auth.,
    20 Pa. D. & C.3d 430 (Pa. Ct. of Common Pleas 1981) . . . . . . . . . . . . . . . . . . . . . . . 27

King County v. Rasmussen,
    299 F.3d 1077 (9th Cir. 2002), cert. denied, 538 U.S. 1057 (2003). . . . . . . . . . . . . . . . 5

Lacy v. East Broad Top R.R. & Coal. Co.,
    77 A.2d 706 (Pa. Super. 1951). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Lacy v. Montgomery,
    124 A.2d 492 (Pa. Super. 1956). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

Lawson v. Simonsen,
    417 A.2d 155, 160 (Pa. 1980), cert. denied, 540 U.S. 821 (2003). . . . . . . . . 20, 22, 25, 26

Lawson v. Washington,
    730 P.2d 1308 (Wash. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Lehigh Nav. Coal. Co. v. Penn. Public Utility Comm'n,
    1 A.2d 540 (Pa. Super. 1938). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Lucas v. South Carolina Coastal Council,
    505 U.S. 1003 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Lucas v. Township of Bethel,
    319 F.3d 595 (3rd Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6

Maniere v. United States,
    31 Fed. Cl. 410 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Nat'l Wildlife Fed'n v. ICC,

850 F.2d 694 (D.C. Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 15, 24

Nebraska Trails Council v. STB,
        120 F.3d 901 (8th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Payne v. Kassab,
        361 A.2d 263 (Pa. 1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Pennsylvania S. V. R. Co. v. Reading Paper Mills,
        24 A. 205 (Pa. 1892). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Pittsburgh, Ft. W. & C. Ry. Co. v. Peet,
        25 A. 612 (Pa. 1893). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Pittsburgh Nat'l Bank v. Equitable Gas Co.,
        220 A.2d 12 (Pa.), cert. denied, 385 U.S. 988 (1966). . . . . . . . . . . . . . . . . . . . . . 29, 30

Preseault v. ICC,
        494 U.S. 1 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 6, 15, 16

Preseault v. United States,
        100 F.3d 1525 (Fed. Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

Quarry Office Park Assocs. v. Phila. Elec. Co.,
        576 A.2d 358 (Pa. Super. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Reiger v. Penn Cent. Corp.,
        No. 85-CA-11, 1985 WL 7919 (Ct. App. Greene County, Ohio, May 21, 1985). . . . . . 17

RLTD Ry.,
        166 F.3d 808 (6th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Scranton v. Wheeler,
        179 U.S. 141 (1900). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Smith v. Adams,
        523 A.2d 788 (Pa. Super.1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 29

Terrell, Lee, and Dougherty Counties,
        GA, No. AB-389 (Sub-No. 1X), 2003 WL 21132515, 3 (STB, May 16, 2003) . . . . . . . 24

Thompson v. R.R. Preservation Society,
        612 A.2d 450 (Pa. Super. 1992), appeal denied, 621 A.2d 581 (Pa. 1992). . . . . . . . . 20, 25

v

Toews v. United States,
    376 F.3d 1371 (Fed. Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

United States v. Dow,
    357 U.S. 17 (1958). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

United States v. Trans-Missouri Freight Ass'n,
    166 U.S. 290 (1897). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Vieux v. East Bay Reg. Park Dist.,
    906 F.2d 1330 (9th Cir.), cert. denied, 498 U.S. 967 (1990). . . . . . . . . . . . . . . . . . . . 26

Washington Wildlife Preservation v. Minnesota,
    329 N.W.2d 543 (Minn.), cert. denied, 463 U.S. 1209 (1983). . . . . . . . . . . . . . . . . . . 17

## CONSTITUTIONS

1874 Pa. Const. art. 17, § 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## FEDERAL STATUTES

National Trails System Act,
    16 U.S.C. § 1247(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 14, 16, 26

## STATE STATUTES

Pennsylvania Rails to Trails Act,
    32 P.S. §§ 5611-5622, P.L. 748, No. 188 (Dec. 18, 1990) . . . . . . . . . . . . . . . . . 13, 18, 30
    32 P.S. § 5613. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    32 P.S. § 5614(a)-(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    32 P.S. § 5614(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    32 P.S. § 5614(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Pennsylvania Act of April 3, 1837, P.L. 170. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Pennsylvania Act of March 7, 1861, P.L. 101. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Pennsylvania Act of March 15, 1847. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

vi

**FEDERAL REGULATIONS**

49 C.F.R. § 1152.29. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 14, 26

49 C.F.R. § 1152.29(a)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

49 C.F.R. § 1152.29(e)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

**LEGISLATIVE MATERIALS**

H.R. Rep. 28, 98th Cong., 1st Sess., 1983 WL 25294 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**OTHER AUTHORITIES**

E. Pierce, A Treatise on the Law of Railroads . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

## INDEX TO DEFENDANT'S APPENDIX

Exhibit No.     Description

1          Pennsylvania Act of April 3, 1837, P.L. 170

2          Pennsylvania Act of March 15, 1847

3          Pennsylvania Act of March 7, 1861, P.L. 101

4          Notice of Assignment of Rights and Obligations and
           Statement of Willingness to Assume Financial
           Responsibility from West Creek Recreational Trail
           Association (WCRTA), filed by Cameron and Elk Counties
           with the STB in Docket No. AB-854(X), December 19,
           2006.

5          STB Decision and NITU, approving substitution of
           WCRTA, Docket No. AB-854(X), December 29, 2006.

6          WCRTA Request to Extend Negotiating Period, filed with
           the STB in Docket No. AB-854(X), January 8, 2007

7          Letter from Allegheny & Eastern Railroad consenting to
           WCRTA's request to extent the NITU, filing with the STB
           in Docket No. AB-854(X), January 10, 2007.

8          STB Decision, Docket No. AB-854(X), January 12, 2007

I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs are the alleged owners of land that abuts or is traversed by a railroad right-of-way owned by Allegheny & Eastern Railroad ("A&E" or "Railroad") that is 18.9 miles long and extends from St. Mary's in Elk County to Emporium in Cameron County.[1]  Plaintiffs allege that they have an ownership interest in the right-of-way that has been taken as a result of the Surface Transportation Board's ("STB") issuance of a decision and Notice of Interim Trail Use ("NITU") under Section 8(d) of the National Trails System Act, 16 U.S.C. 1247(d) ("Trails Act").[2]  The Trails Act authorizes the STB "to preserve for possible future railroad use rights-of-way not currently in service and to allow interim use of the land as recreational trails."  Preseault v. ICC, 494 U.S. 1, 6-7 (1990) (footnotes omitted).

The determination of whether the United States is liable in this case turns on whether the Plaintiffs have any ownership interest in the subject right-of-way and, if so, whether the operation of the Trails Act in this particular case has interfered with that interest in a manner that rises to the level of a "taking" under the Fifth Amendment.  To facilitate this determination, the parties have reviewed all of the original conveyances to the Railroad, broken those conveyances down into seven conveyance categories, and stipulated to the nature of the property interest acquired by the Railroad for each category.  The interests acquired by the Railroad include fee

_____

[1]The term "Plaintiffs" is used herein to refer to the representative plaintiffs and the certified class that they represent.  The term "Railroad" is used to refer to both A&E and its predecessors-in-interest.

[2]See National Trails System Act Amendments of 1983, Pub.L.No. 98-11, Title II, 97 Stat. 42, 48 (amending National Trails System Act, Pub. L. No. 90-543, 82 Stat. 919 (codified as amended at 16 U.S.C. 1241 et seq.)).  The implementing regulations for the Trails Act are found at 49 C.F.R. § 1152.29.

1

simple title to some segments of the subject right-of-way (the lands in Categories 1 and 5, and part of Category 4), a fee simple determinable (conditional fee) in other segments (Category 2), and a right-of-way for railroad purposes in the remaining segments (Categories 3, 6, 7 and the remaining part of Category 4). The question addressed in this cross-motion is whether the operation of the Trails Act resulted in a taking of the Plaintiffs' interest in any of these segments.

As set forth below in Section III.A., the Railroad owns a fee simple interest in several portions of its right-of-way. Plaintiffs have no ownership interest in these segments of the right-of-way and thus have no standing to pursue a takings claim involving these segments. Defendant is therefore entitled to summary judgment as to the segments of the right-of-way that the Railroad owns in fee simple.

The Railroad acquired either a conditional fee or a right-of-way for railroad purposes to the remaining segments of the subject right-of-way. In both cases, under Pennsylvania law the original grantor retained a reversionary interest in lands granted to the Railroad.[3] Plaintiffs' claims are based on the contention that the actions of the federal government pursuant to the Trails Act have taken their interest in the subject right-of-way by delaying A&E's abandonment and thereby precluding any reversion of the right-of-way to them. See Lucas v. Township of Bethel, 319 F.3d 595, 604 (3rd Cir. 2003) ("[t]he National Trails Act is designed to prevent an interest in a railroad right of way from reverting under state law when the right of way is used as a trail after the railroad discontinues service"); Preseault, 494 U.S. at 7-8; 16 U.S.C. § 1247(d) ("such interim use shall not be treated, for purposes of any law or rule of law, as an abandonment

---

[3]The certified class is defined to include the successors-in-title to the original grantors to the Railroad. The identification of those class members will occur at a later date, if necessary.

2

of the use of such rights-of-way for railroad purposes").

Contrary to Plaintiffs' assertions, there has been no taking of their reversionary interests in the subject right-of-way for three reasons. First, the right-of-way in which Plaintiffs own a reversionary interest is a public highway that is held in trust by the Railroad for the people of the Commonwealth. In addition, any reversionary interests in the right-of-way are subject to the Commonwealth's reserved right to acquire the right-of-way for any public use. Since the two present uses authorized by the Trails Act – railbanking and interim trail use – are both public uses of the right-of-way under federal and Pennsylvania state law, such uses do not infringe upon or interfere with any reversionary interests in the right-of-way at issue here. See Section III.B.1-2, *infra*. Second, contrary to Plaintiffs' assertions, the operation of the Trails Act in this case does not result in an abandonment of the right-of-way as a matter of Pennsylvania state law, nor would the right-of-way be deemed abandoned under state law but for the application of the Trails Act. See Section III.B.3, *infra*. Finally, railbanking and interim trail use are permissible public uses under the doctrine of shifting public uses. See Section III.B.4, *infra*. For all of these reasons, the operation of the Trails Act in this case has not taken any private property and summary judgment should be entered in favor of Defendant.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Summary judgment is appropriate in this case because the relevant and material facts in this case are undisputed. See Fed. R. Civ. P. 56. These undisputed facts are set forth in the parties' Joint Statement of Facts ("JSF") (Doc. 26). The parties' stipulations regarding title matters are set forth as Exhibit 2 in the parties' Joint Appendix (Doc. 27), and in the parties' Second Set of Stipulations Regarding Title Matters (Doc. 28).

III.    **ARGUMENT**

Plaintiffs allege that their property has been taken from them on the ground that, but for the application of the Trails Act, A&E's railroad right-of-way would revert to them under Pennsylvania state law because A&E would be deemed to have abandoned the right-of-way or its interest in the right-of-way would be otherwise extinguished as a matter of state law. For the reasons set forth below, Plaintiffs' takings claims should be rejected either because they have no ownership interest in the subject right-of-way or because their limited "reversionary interests" have not been interfered with. In both cases, the operation of the Trails Act does not result in a taking of Plaintiffs' property and summary judgment should be granted in favor of Defendant.

A.    <u>Summary Judgment Must Be Granted in Favor of the United States For Those Parcels in Which the Railroad Acquired a Fee Simple Absolute Interest</u>

In order to maintain their takings claim in this case, Plaintiffs must first establish that they had an ownership interest in the right-of-way lands on the date of the alleged taking. <u>E.g.</u>, <u>United States v. Dow</u>, 357 U.S. 17, 20-21 (1958) (only the owner of the property at the time of the taking is entitled to compensation under the Fifth Amendment); <u>Amaliksen v. United States</u>, 55 Fed. Cl. 167, 171 (2003) ("Establishing title to the property allegedly taken is essential in asserting a taking").[4] Absent such an ownership interest, Plaintiffs have no standing to pursue a claim that their property has been taken. <u>E.g.</u>, <u>Maniere v. United States</u>, 31 Fed. Cl. 410, 420-21 (1994) (proof of possessing an interest in the property at issue is required to establish standing in

---

[4]The United States Court of Federal Claims has exclusive jurisdiction over Fifth Amendment takings claims against the United States exceeding $10,000. <u>See</u> 28 U.S.C. § 1346(a)(2) and 28 U.S.C. § 1491(a)(1). The United States Court of Appeals for the Federal Circuit has exclusive jurisdiction over appeals in takings cases from both the Court of Federal Claims and the District Courts of the United States. <u>See</u> 28 U.S.C. § 1295.

a takings case).

In the context of a Fifth Amendment takings claim arising out of the Trails Act, it is well established that if the railroad company acquired fee simple title to the lands that make up its right-of-way, then the landowners abutting the right-of-way have no ownership interest in the right-of-way and therefore cannot maintain a takings claim. As explained by the Federal Circuit,

> [c]learly, if the Railroad obtained fee simple title to the land over which it was to operate, and that title inures, as it would, to its successors, the [landowners] today would have no right or interest in those parcels and could have no claim related to those parcels for a taking.

Preseault v. United States, 100 F.3d 1525, 1533 (Fed. Cir. 1996). See also King County v. Rasmussen, 299 F.3d 1077, 1088-89 (9th Cir. 2002) (affirming dismissal of rail-trail takings claims where railroad held fee simple title to the right-of-way), cert. denied, 538 U.S. 1057 (2003); Nat'l Wildlife Fed'n v. ICC, 850 F.2d 694, 703 (D.C. Cir. 1988) (rights-of-way held by the railroad in fee simple interests "are not affected by the takings clause aspect of this case").

In this case, the parties have stipulated that, under Pennsylvania law, the Railroad acquired a fee simple interest to the lands described in the warranty deeds in Category 1, to the lands described in two of the deeds in Category 4, and to the lands in Category 5. JSF 5-6; Joint Ex. 3 (Stipulated Conveyance Categories); Joint Ex. 2 (Title Stipulations). Because the Railroad acquired a fee simple interest in these lands, Plaintiffs have no ownership interest and thus no standing to bring claims alleging a taking of these lands. Accordingly, Defendant is entitled to summary judgment with respect to the lands in Categories 1, 5 and part of Category 4.

B.    Pennsylvania Law Makes Clear That Even Where The Railroad Acquired Only a
Right-of-Way for Railroad Purposes, There Has Been No Taking of Plaintiffs'
Reversionary Interest

For the remaining parcels of property, the parties have stipulated that, under Pennsylvania

law, the Railroad acquired either a right-of-way for railroad purposes (Categories 3, 6, 7 and part

of Category 4) or a fee simple determinable (Category 2).[5]  Joint Ex. 2–3; Second Set of Title

Stipulations (Doc. 28).  The parties further agree that the original grantors to the Railroad

retained a reversionary interest in the land subject to this right-of-way.  The owners of this

reversionary interest as of the alleged date of taking are included in the previously certified class.

See Class Cert. Order (Doc. 16).

The fact that the Railroad acquired only a right-of-way to certain portions of the corridor

at issue in this case is not outcome-determinative with respect to Plaintiffs' takings claims.

Instead, the question of whether the Trails Act effects a taking depends "upon the nature of the

state-created property interest that [plaintiffs] would have enjoyed absent the federal action and

upon the extent that the federal action burdened that interest."  Preseault, 494 U.S. at 24

(O'Connor, J., concurring).  See also Lucas v. Township of Bethel, 319 F.3d at 603 (state

property law controls the disposition of a railroad right-of-way after the ICC authorizes

abandonment and its jurisdiction ends).  In other words, if railbanking and interim trail use are

permissible uses of the subject right-of-way as a matter of Pennsylvania law, then the operation

of the Trails Act does not result in a taking of any reversionary interest in that right-of-way.  See

_____

[5]Under Pennsylvania law, "[a] fee simple determinable is an estate in fee that
automatically reverts to the grantor upon the occurrence of a specified event."  Higbee Corp. v.
Kennedy, 428 A.2d 592, 594 (Pa. Super. 1981).  The interest retained or held by the grantor of
such an estate "is termed a possibility of reverter."  Id. at 595.

6

Preseault, 494 U.S. at 16 n.9 (citing cases in which "state courts have held that trail use does not constitute abandonment of a right-of-way for public travel so as to trigger reversionary rights"); Preseault, 100 F.3d at 1552 (if the terms of the railroad's easement are broad enough to encompass trail use, then "the servient estate holder would not be in a position to complain about the use of the easement for a permitted purpose").

As explained below, in this case the Railroad's interest in the subject right-of-way is broad enough to allow for railbanking and interim trail use without causing any abandonment of the right-of-way or otherwise causing the right-of-way to revert for several reasons.  First, under Pennsylvania law, railroad rights-of-way are public highways that are dedicated to public use. The scope of these rights-of-way is broad enough to allow the use of the right-of-way for both railbanking and interim trail use purposes, as evidenced by the public purpose of the right-of-way and by the Commonwealth of Pennsylvania's retained or reserved interest in the right-of-way. Second, as a matter of Pennsylvania state law, the operation of the Trails Act in this case does not cause an abandonment of the subject right-of-way, nor would the right-of-way be deemed abandoned under state law but for the application of the Trails Act.  Third, railbanking and interim trail use are public uses that, under the so-called doctrine of shifting public uses, do not trigger abandonment.

> 1.   The Public Nature of the Subject Right-of-Way and the Commonwealth's Retained Interest in the Right-of-Way Are Limitations on Plaintiffs' Title That Preclude Their Takings Claim

The determination of whether the actions of the government constitute a "taking" of private property begins with an analysis of the scope of Plaintiff's property interest, including a determination of whether there are any limitations or restrictions that inhere in Plaintiff's title.

This threshold inquiry is necessary in all takings cases because a government's exercise of rights that are reserved to it under applicable state or federal law, or actions that are consistent with limitations and restrictions already placed upon ownership of the land in question, do not constitute a taking.  See Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1029 (1992) (government restrictions do not constitute a taking if those restrictions "inhere in the title itself, in the restrictions that background principles of the State's law of property and nuisance already place upon land ownership");id. at 1028 (observing that "the Court assuredly would permit the government to assert a permanent easement that was a pre-existing limitation upon the owner's title" in defense of a physical occupation-type taking claim); Glass v. Goeckel, 703 N.W.2d 58, 78 (Mich. 2005) ("The state cannot take what it already owns.  Because littoral private title remains subject to the public trust, no taking occurs when the state protects and retains that which it could not alienate: public rights held pursuant to the public trust doctrine."), cert. denied, 126 S. Ct. 1340 (2006).  See also Scranton v. Wheeler, 179 U.S. 141, 163 (1900) (interests of "riparian owner in the submerged lands . . . bordering on a public navigable water" are held subject to public's navigational servitude).

In this case, the interest allegedly taken is Plaintiffs' reversionary interest in a railroad right-of-way.  The scope of that reversionary interest is defined and limited by the scope of the Railroad's interest in the subject right-of-way, by the Commonwealth's reserved interest in the right-of-way, and by the public trust that is imposed upon the use of the right-of-way as a matter of state law.   These are all inherent limitations in the "bundle of sticks" that comprise the reversionary interest retained by the Plaintiffs in the right-of-way.  As set forth below, because the uses of the right-of-way authorized by the Trails Act do not exceed these pre-existing

8

limitations that already inhere in Plaintiffs' limited reversionary interests, the operation of the Trails Act in this case does not result in a taking.

          a.      <u>The Nature and Scope of the Subject Railroad Right-of-Way</u>

The development of the subject right-of-way began in 1837, when the Pennsylvania legislature authorized the incorporation of the Sunbury and Erie Railroad company, A&E's predecessor.[6] Act of April 3, 1837, P.L. 170 (Def. Ex. 1). Under the 1837 Act, the Sunbury and Erie Railroad was granted "all the privileges, franchises and immunities incident to a corporation" including the right "to purchase, receive, have, hold and enjoy" lands and other real estate. 1837 Act, Sec. 2; <u>see also</u> 1837 Act, Sec. 26 (authorizing the railroad to receive and hold donations and subscriptions of land). The 1837 Act also gave the company the right to enter and, if necessary, condemn lands required for the construction of its railroad. <u>Id.</u>, Sec. 12-13. This grant of condemnation authority is indicative of the public nature of railroad rights-of-way since such authority "can be exercised only for a public purpose intended to benefit the public." <u>Lacy v. Montgomery</u>, 124 A.2d 492, 497 (Pa. Super. 1956). In this case, the Railroad acquired the lands that comprise the subject corridor by both purchase and condemnation. JSF 5-6; Joint Ex. 2-3.

The 1837 authorizing legislation further defined the rights granted to the railroad as including any other "liberties, privileges or franchises . . . as may be necessary or incident to the making and maintaining the said railroad, convenient construction of depots, such cars, locomotives, fixtures and devices, as may be necessary for the conveyance of passengers, and the

---

[6]The name of the Sunbury and Erie Railroad Company was changed to the Philadelphia and Erie Railroad Company in 1861. Act of March 7, 1861, P.L. 101 (Def. Ex. 3).

transportation of the mail, and of goods, merchandise and commodities thereon." 1837 Act, Sec. 2. Supplemental legislation enacted in 1847 granted the Railroad "full power and authority to purchase and place on the said railroads, all locomotives, machines, vehicles, carriages and teams of any kind whatsoever, which they may deem proper and necessary for the purposes of transportation, and have full power to transport passengers, goods, minerals, merchandize and other articles, and to receive and collect freight and tolls therefor . . . ." Act of March 15, 1847, Sec. 1 (Def. Ex. 2).

The development of a railroad system in Pennsylvania, including the subject right-of-way, was also governed by the Act of February 19, 1849, which applied to all railroad companies in Pennsylvania. Section 18 of the 1849 Act provides "[t]hat upon the completion of any railroad authorized as aforesaid, the same shall be esteemed a public highway for the conveyance of passengers, and the transportation of freight[.]" Joint Ex. 1. When the Commonwealth enacted its first constitution in 1874, it also provided that when the line of a railroad is connected with the railroad system in the state, it becomes a public highway and is "hence subject to regulation as such by the state." Lehigh Nav. Coal. Co. v. Penn. Public Utility Comm'n, 1 A.2d 540, 544 (Pa. Super. 1938) (citing 1874 Pa. Const. art. 17, § 1). Thus, under Pennsylvania law, "[t]he right of way of a railroad company, whatever its established width, as soon as acquired, is impressed with a public use. It constitutes a public highway. The railroad company holds it in trust for the people of the Commonwealth, which trust is a direct and continuous trust against which no statute of limitations runs." Lacey v. Montgomery, 124 A.2d at 497-98 (citing Conwell v. Philadelphia & R.R. Co., 241 Pa. 172, 88 A. 417 (1913)). See also Erie & North-East R.R. v. Casey, 26 Pa. 287, 1856 WL 7092, *19 (1856) ("Railroads made by the authority of the

Commonwealth upon land taken under her right of eminent domain, and established by her laws as thoroughfares for the commerce that passes through her borders, are her highways."). The public nature of the right-of-way acquired by the Railroad is a pre-existing limitation that inheres in Plaintiffs' ownership interest in the right-of-way lands. Thus, Plaintiffs are not entitled to a reversion of the right-of-way lands while the right-of-way remains subject to the public trust and is being put to a public use.

In addition, to protect the public's interest in the right-of-way, the Commonwealth reserved a right to acquire the right-of-way from the Railroad. Specifically, in authorizing the construction of the subject railroad, the Pennsylvania legislature expressly reserved the right to purchase the railroad to be constructed under the 1837 Act "with its appurtenances, at any time after the expiration of fifty years from the passage of this act, by paying to the said [railroad] company a sum of money which, with the tolls received, shall equal the cost and expenses of making and maintaining the said railroad . . . ." 1837 Act, Sec. 28. Similarly, in the General Railroad Act of 1849 the legislature "reserve[d] the power to resume, alter or amend any charter granted under this act, and take for public use any road constructed in pursuance of such charter[.]" 1849 Act, Sec. 20 (Joint. Ex. 1). The exercise of this reserved right has been explained by the Pennsylvania Supreme Court as follows:

> [w]hen the [railroad] franchise ceases by its own limitation, by forfeiture or by repeal, the highway is thrown back on the hands of the state, and it becomes her duty, as the sovereign guardian of the public rights and interests, to take care of it. She may renew the franchise, give it to some other person, exercise it herself, or declare the highway open and free to all the people.

Erie & North-East R.R. v. Casey, 26 Pa. 287, 1856 WL 7092, *19 (1856). Significantly, the Commonwealth's reserved interest does not restrict the use of the right-of-way in any manner

11

other than requiring that it be used for "public use." 1849 Act, Sec. 20.

Moreover, the only other condition placed on the exercise of the Commonwealth's reserved right to take a railroad right-of-way "for public use" is the requirement that "full compensation shall be made to the stockholders [of the railroad company]." Id. The requirement that full compensation shall be made to the shareholders of the railroad company, with no requirement that further compensation to be paid to the holders of any reversionary interest in the right-of-way, suggests that Plaintiffs' predecessors received full compensation for this broad railroad and public use right-of-way from the Railroad at the time the right-of-way was first created. See Smith v. Adams, 523 A.2d 788, 789 (Pa. Super.1987) (as a public highway, a railroad is treated similarly to a public street or road, which "may be used for any public service without additional or further compensation due an abutting landowner"). Thus, the rights of the reversionary interest holders are subject to the use of the right-of-way for any "public use" without further compensation.

Finally, the right-of-way acquired by the Railroad in this case is broader than a typical common law easement. Indeed, Pennsylvania courts have long recognized that although a railroad's "title is sometimes called an 'easement,' . . . it is a right to *exclusive possession*, to fence in, to build over, the whole surface, to raise and maintain any appropriate superstructure, including necessary foundations, and to deal with it, within the limits of railroad uses, as absolutely and as uncontrolled as an owner in fee." Pennsylvania S. V. R. Co. v. Reading Paper Mills, 24 A. 205 (Pa. 1892) (emphasis added). See also Pittsburgh, Ft. W. & C. Ry. Co. v. Peet, 25 A. 612 (Pa. 1893) (the estate acquired by a railroad company is more than a mere common law easement or right-of-way). Because the Railroad has the right of exclusive possession to the

right-of-way, the holders of the reversionary interest have no present possessory rights to occupy or use the right-of-way – or any right to regain possession of the right-of-way – while the right-of-way lands are being used by the Railroad and/or remain subject to the public trust.

     b. <u>Railbanking and Interim Trail Use Are Consistent With and Do Not Infringe Upon Plaintiffs' Reversionary Interest</u>

  The question presented in this case is whether the railbanking and interim trail use authorized by the Trails Act constitute "public use" of the right-of-way under Pennsylvania law. To begin with, a review of contemporaneous case law indicates that "public use" was defined broadly at the time that the subject right-of-way was created. As the court stated in its 1856 decision in <u>Erie & North-East R.R. v. Casey</u>, *supra*, if a railroad's franchise ceases, the Commonwealth is entitled to step in and "renew the franchise, give it to some other person, exercise it herself, *or declare the highway open and free to all the people*." 26 Pa. 287, 1856 WL 7092, *19 (emphasis added).

  Moreover, the Pennsylvania legislature's 1990 enactment of the Pennsylvania Rails to Trails Act, 32 P.S. §§ 5611-5622, P.L. 748, No. 188 (Dec. 18, 1990) ("Pennsylvania RTA"), confirms that the uses authorized by the federal Trails Act – railbanking and interim trail use – are considered under Pennsylvania law to be public uses of railroad rights-of-way. Specifically, the Pennsylvania RTA created "the Pennsylvania Rails to Trails Program, the purpose of which is to acquire, operate, maintain and develop available railroad rights-of-way for public recreational trail use." 32 P.S. § 5613. The Pennsylvania law authorizes the Commonwealth to acquire available rights-of-way for public use either directly or through participating in abandonment proceedings before the STB and its predecessor, the ICC. 32 P.S. § 5614(a)-(b). The Commonwealth is further authorized to, *inter alia*, "transfer its interest in any recreational

trail or portion thereof to a local governmental agency or agencies having jurisdiction over the area in which the recreational trail is located . . . ." 32 P.S. § 5614(e). In addition, the Act expressly authorizes counties to accept, by gift or purchase, title to available railroad rights-of-way for the purposes of the Act. 32 P.S. § 5614(c). The Pennsylvania RTA is strong and convincing evidence that railbanking and interim trail use of railroad rights-of-way within the Commonwealth are considered public uses of those rights-of-way.

The undisputed facts of this case reveal that the STB's issuance of a NITU – which operates to maintain the status quo pending negotiations between the Railroad and the qualified trail sponsors – falls well within the pre-existing limitations on Plaintiffs' reversionary interests, including the Commonwealth's pre-existing right to acquire and use the right-of-way for public purposes. Specifically, after A&E filed a Petition for Exemption with the STB, Elk County and Cameron County requested the issuance of a NITU and filed statements of willingness to assume financial responsibility for the subject right-of-way. JSF 7-10. A&E indicated that it was willing to negotiate a railbanking and interim trail use agreement with the Counties, and a NITU was issued. JSF 11-12. Pursuant to the NITU, A&E still holds title to the subject right-of-way and continues to participate in the ongoing regulatory proceedings by negotiating with the Counties, and with the Counties' recent assignee, over a railbanking and interim trail use agreement.[7]

---

[7]On December 19, 2006, West Creek Recreational Trail Association, Inc. ("WCRTA") filed a Statement of Willingness to Assume Financial Responsibility for the A&E right-of-way pursuant to 16 U.S.C. § 1247(d) and 49 C.F.R. § 1152.29. Def. Ex. 4. In addition, Elk and Cameron Counties filed a notice assigning their rights and obligations to the use, operation and maintenance of the right-of-way to WCRTA. Def. Ex. 4. On December 29, 2006, the STB issued a decision approving the substitution of WCRTA for the Counties in the railbanking negotiations. Def. Ex. 5. Shortly thereafter, WCRTA filed a request for an extension of time to negotiate a railbanking and interim trail use agreement with A&E. Def. Ex. 6. A&E filed a letter with the STB on January 10, 2007, stating that "it is agreeable to the request to extend the period

In sum, state law makes clear that the acquisition of a right-of-way for railbanking and interim trail use is an acquisition for public use. A&E's negotiations with the Counties and their assignee pursuant to the Trails Act and the STB's Trails Act regulations are thus fully consistent with the Commonwealth's retained right to acquire the subject right-of-way for public use. Because this reserved interest inheres in Plaintiffs' title and is a pre-existing limitation on any reversionary interest held by the Plaintiffs, and because the actions taken under or authorized by the Trails Act are consistent with the Commonwealth's reserved interest, the operation of the Trails Act does not take anything from the Plaintiffs in this particular case. Summary judgment should therefore be granted in favor of Defendant.

2.    The Scope of the Subject Right-of-Way is Broad Enough to Allow Railbanking and Interim Trail Use

The Trails Act authorizes two distinct present uses of railroad rights-of-way that are subject to a NITU: (1) railbanking, and (2) interim trail use. Preseault v. ICC, 494 U.S. at 10, 17-18; see also Citizens Against Rails-To-Trails v. STB, 267 F.3d 1144, 1153 (D.C. Cir. 2001) ("Congress' stated purposes in enacting the Trails Act were twofold: to preserve rail corridors for future railroad use and to permit public recreational use of trails."); Nat'l Wildlife Federation v. ICC, 850 F.2d 694, 707 (D.C. Cir. 1988) (declining to find that railbanking is a fiction, noting that "Congress specifically identified rail banking as a goal in the test of § 8(d)" of the Trails Act). As set forth above, the right-of-way acquired by the Railroad in this case is a public highway that is subject to a public trust. As such, the right-of-way may be used for "public uses"

_____

to negotiate an interim trail use and railbanking agreement with West Creek Recreational Trail Association." Def. Ex. 7. On January 12, 2007, the STB issued a Decision and NITU that extends the negotiating period until April 13, 2007. Def. Ex. 8.

without infringing upon any reversionary interests that are still held in the right-of-way lands. Railbanking and interim trail use qualify under Pennsylvania law as such public uses. However, even if the subject right-of-way was found by the Court to be strictly limited to "railroad purposes," there is no taking in this case because the railbanking and interim trail use constitute railroad uses or purposes. Accordingly, even in the absence of the Trails Act, such uses would not exceed the scope of the subject right-of-way and would not constitute abandonment of the right-of-way by the Railroad.

a.    <u>Railbanking is a Railroad Use or Purpose</u>

The term railbanking refers to "the preservation of railroad corridor for future rail use." <u>Nebraska Trails Council v. STB</u>, 120 F.3d 901, 903 n.1 (8th Cir. 1997); <u>Chevy Chase Land Co. v. United States</u>, 37 Fed. Cl. 545, 584 (1997) (railbanking is "preserving the rail corridor for future railroad use"), <u>aff'd</u>, 230 F.3d 1375 (Fed. Cir. 1999), <u>cert. denied</u>, 531 U.S. 957 (2000). The railbanking mechanism furthers "the national policy to preserve established railroad rights-of-way for future reactivation of rail service" and protects rail transportation corridors. 16 U.S.C. § 1247(d). Railbanking thus provides an alternative to the abandonment of a right-of-way, which can result in the extinguishing of any easements that comprise the right-of-way and the loss of the right-of-way corridor as part of the national transportation system. <u>Preseault v. ICC</u>, 494 U.S. at 5 n.3; <u>RLTD Ry.</u>, 166 F.3d 808, 811 (6th Cir. 1999).

Railbanking is a present use of a right-of-way that is akin to non-use of the right-of-way for active rail service for a period of time without intent to abandon the right-of-way permanently. Under Pennsylvania state law, the mere non-use of a railroad right-of-way or easement does not result in an abandonment of the railroad's interest. <u>See</u> Section III.B.3., *infra*.

16

Railbanking thus serves a railroad purpose by maintaining and preserving a right-of-way, as an intact corridor that remains part of the national transportation system, until the corridor is needed for the reactivation or restoration of active rail service. Birt v. STB, 90 F.3d 580, 581-83 (D.C. Cir. 1996); Preseault v. ICC, 494 U.S. at 10, 17-19.

In sum, railbanking is fully consistent with purposes for which the right-of-way was first created because it furthers railroad purposes by preserving the right-of-way for future railroad use. Railbanking thus falls squarely within the scope of the subject right-of-way and, consequently, does not "take" anything from the reversionary interest owners. That interest simply remains subject to and burdened by the same right-of-way that was created under the Railroad's 1837 authorizing legislation and the General Railroad Act of 1849.

      b.    Interim Trail Use Under the Trails Act Furthers Railroad Purposes and Serves a Public Transportation Purpose

The second use of the subject right-of-way that is authorized by the Trails Act is interim trail use. Although this use is authorized by the NITU in this case, the Railroad's negotiations with the Counties and their successor in interest has not yet resulted in an interim trail use agreement.[8] Regardless of whether interim trail use is implemented in this case, that authorized use would not result in a taking because interim trail use – like railbanking – is well within the scope of the subject right-of-way and thus does not interfere with the reversionary interests held by Plaintiffs.[9]

---

       [8]If no agreement is reached between A&E and the Counties' assignee, A&E may elect to exercise the authority granted to it by the STB to abandon the subject right-of-way as a matter of federal law.

       [9]A number of courts have considered the question of whether railbanking and interim trail use fall within the scope of a railroad easement created under state law. Decisions in which the

Interim trail use falls within the scope of the subject right-of-way for at least two reasons. First, interim trail use furthers railroad use of the right-of-way by allowing the preservation of the subject right-of-way through the railbanking process. Specifically, the applicable provision of the Trails Act operates by authorizing a third party (often referred to as the trail sponsor) to manage and utilize the corridor for interim trail use during the railbanking period. This third party assumes management responsibility and liability for the corridor for the duration of the railbanking/interim trail use period, along with all of the costs associated with those responsibilities. Relieving railroads of such responsibility during the railbanking period encourages railroad companies to preserve their rights-of-way so they are available for future active rail use. See H.R. Rep. 28, 98th Cong., 1st Sess., 1983 WL 25294 (1983) (stating that the Trails Act "will protect railroad interests by providing that the right-of-way can be maintained for future railroad use even though service is discontinued and tracks removed, and by protecting the railroad interests from any liability or responsibility in the interim period.").

Interim trail use also falls within the scope of the subject right-of-way because this use qualifies as a public transportation use of the corridor. Under Pennsylvania law, trail use is

---

court found that railbanking and interim trail use fall within the scope of a railroad easements under state law include: Chevy Chase Land Co. v. United States, 733 A.2d 1055 (Md. 1999); Washington Wildlife Preservation v. Minnesota, 329 N.W.2d 543 (Minn.), cert. denied, 463 U.S. 1209 (1983); Reiger v. Penn Cent. Corp., No. 85-CA-11, 1985 WL 7919 (Ct. App. Greene County, Ohio, May 21, 1985); and Barney v. Burlington N. R.R., 490 N.W.2d 726 (S.D. 1992). Decisions in which the court reached the opposite conclusion under other state law include: Toews v. United States, 376 F.3d 1371 (Fed. Cir. 2004) (California law); and Lawson v. Washington, 730 P.2d 1308, 1311-13 (Wash. 1986). Although all of these decisions may provide some general guidance for this Court on the nature of the inquiry, they are not controlling here because none of these cases involved Pennsylvania state law and the question of whether railbanking and interim trail use are uses that fall within the scope of the right-of-way at issue in this case is a question of Pennsylvania law.

considered a public use of railroad rights-of-way.  See Pennsylvania Rails to Trails Act, 32 P.S. §§ 5611-5622, discussed in Section III.B.1.b., *supra*.  Pennsylvania has a large network of public rail-trails.  These public trails, which are located in every region of the Commonwealth and are part of its multi-modal transportation system, have been acquired, designed, constructed and are being managed through what the Commonwealth describes as "a dynamic partnership" between the Pennsylvania Department of Conservation and Natural Resources ("DCNR"), local Rail-Trail organizations, counties, townships and municipalities.  See http://www.dcnr.state.pa.us/railtrails/ default.aspx (last visited January 18, 2007).  Currently, there are 93 public rail-trails in the Commonwealth, with 975.4 miles of open trail, 87.5 miles under construction, and an additional 600.6 miles in the proposal phase.  See http://www.dcnr.state.pa.us/railtrails/alltrails.aspx (last visited January 18, 2007).

Similarly, under federal law, corridors available for pedestrian and bicycle use are recognized as an important component of the national transportation system.  Recent federal highway funding legislation, the Safe Accountable Flexible Efficient Transportation Equity Act: A Legacy for Users ("SAFETEA-LU"), Pub. L. 109-59, 119 Stat. 1144 (Aug. 10, 2005), allocates $370 million over a five year period to provide funds to the States "to develop and maintain recreational trails and trail-related facilities for both non-motorized and motorized recreational trail uses." See http://www.fhwa.dot.gov/safetealu/factsheets/rectrails.htm (last visited January 17, 2007).  This legislation requires metropolitan and statewide transportation planning processes to include consideration of bicycle and pedestrian facilities as part of a national intermodal transportation system.  SAFETEA-LU, Sec. 3006; see also http://www.fhwa.dot.gov/safetealu/ summary.htm (Transportation Planning) (last visited January 17, 2007).  In addition, federal law

presently requires that 10% of federal surface transportation funds must be used for eligible

"transportation enhancements," which include the "[p]rovision of facilities for pedestrians and

bicycles" and "[p]reservation of abandoned railway corridors (including the conversion and use

*of the corridors* for pedestrian or bicycle trails)."  See http://www.fhwa.dot.gov/environment/te/

guidance.htm (Background, Project Linkage and Eligible Activities) (last visited January 17,

2007).

Accordingly, the interim use of the subject right-of-way that is authorized by the Trails

Act not only serves a railroad purpose by allowing and facilitating the preservation of the

corridors through railbanking, but is also an independent public use of the right-of-way under

both Pennsylvania state law and federal law that falls well within the scope of right-of-way.

Therefore, the uses of the right-of-way authorized by the Trails Act do not result in a taking of

any interest owned by the Plaintiffs.

3.    The Subject Right-of-Way Has Not Been Abandoned Under State Law

Plaintiffs' motion for summary judgment is based on the assertion that, but for the

application of the Trails Act, the subject right-of-way would have been deemed abandoned as a

matter of Pennsylvania law as of October 30, 2003.  Pls.' Mot. at 4; Pls.' Mem. at 9.  To the

contrary, as set forth below, the undisputed facts of this case demonstrate that A&E has not

abandoned the subject right-of-way.

a.    Abandonment Requires Intent Plus Affirmative Acts

Under Pennsylvania law, "[i]n evaluating whether the user abandoned the property, the

court must consider whether there was an intent to abandon the property interest, together with

external acts by which such intention is carried out."  Buffalo Township v. Jones, 813 A.2d 659,

664 (Pa. 2002) ("Buffalo Township II") (citing <u>Lawson v. Simonsen</u>, 417 A.2d 155, 160 (Pa.

1980)), <u>cert. denied</u>, 540 U.S. 821 (2003).  As explained by the Pennsylvania Supreme Court,

> In order to establish the abandonment of a right-of-way, the
> evidence must show that the easement holder intended to give up
> its right to use the easement permanently. . . . "Such conduct must
> consist of some *affirmative act* on his part which renders use of the
> easement impossible, or of some *physical obstruction* of it by him
> in a manner that is inconsistent with its further enjoyment."

<u>Buffalo Township II</u>, 813 A.2d at 665 (quoting <u>Thompson v. Maryland and Pennsylvania R.R.</u>

<u>Preservation Society</u>, 612 A.2d 450, 453 (Pa. Super. 1992), <u>appeal denied</u>, 621 A.2d 581 (Pa.

1992)).  Importantly, "no single factor alone is sufficient to establish the intent to abandon" and

"[a]bandonment must be determined based upon all the circumstances surrounding the alleged

abandonment."  <u>Id.</u> at 665.  Here, as set forth below, the undisputed facts of this case do not

establish that A&E intends to give up its right to use the subject right-of-way permanently.  In

addition to the lack of requisite intent, A&E has not taken affirmative acts that would render the

use of the right-of-way impossible.  Accordingly, the right-of-way has not been abandoned under

Pennsylvania law and would not be deemed abandoned under Pennsylvania law but for the

application of the Trails Act.

        b.    <u>A&E's Actions Demonstrate an Unequivocal Intent to Preserve the</u>
                <u>Right-of-Way</u>

Contrary to Plaintiffs' assertions, A&E's actions in this case demonstrate that A&E has

not abandoned the subject right-of-way.  Instead, A&E's actions are consistent with an intent to

preserve the right-of-way so that the right-of-way remains available for rail use in the future.

Under Pennsylvania law, such actions do not constitute abandonment.

To begin with, A&E's filing of a Notice of Exemption and subsequent participation in

regulatory proceedings before the STB does not demonstrate an intent to abandon the subject right-of-way.  Indeed, it is well established under Pennsylvania law that filing with the STB for authorization to abandon service on a particular rail line "is not enough in itself" to establish abandonment.  In re Condemnation by Lancaster County, 909 A.2d 913, 916 (Pa. Cmwlth. 2006). Such a filing "may evidence intent to abandon, but it must be accompanied by external acts."  Id. (citing Lacy v. East Broad Top R.R. & Coal. Co., 77 A.2d 706 (Pa. Super. 1951)).

The rationale for this rule is quite simple.  Participation in federal regulatory abandonment proceedings before the STB is not necessarily indicative of a railroad's intent to abandon its property interest in a particular right-of-way as a matter of state or federal law. Instead, the filing of a notice of exemption is merely a request to cease active rail service on the line.  If the STB approves the railroad's exemption notice, the railroad may then proceed to consummate the abandonment of the rail line.  See 49 C.F.R. § 1152.29(e)(2) (requiring a railroad to file a "notice of consummation" if it chooses to abandon the corridor).  However, filing a notice of exemption is also a prerequisite to obtaining a notice or certificate of interim trail use that authorizes the railroad and a qualified trail sponsor to negotiate a railbanking agreement that will preserve the right-of-way for future rail use.  Caldwell v. United States, 57 Fed. Cl. 193, 195 (2003), aff'd on other grounds, 391 F.3d 1226 (Fed. Cir. 2004), cert. denied, 126 S. Ct. 366 (2005).  In the latter case, participation in the federal regulatory process is consistent with an intent to maintain the right-of-way rather than to abandon it.

For example, in Buffalo Township v. Jones, the Commonwealth Court rejected the proposition that a request for approval from the ICC (the STB's predecessor) to abandon a rail line is sufficient evidence of actual abandonment, stating:

22

> In this case, while [the railroad company] petitioned for and
> received approval from the ICC to abandon its rail line and
> subsequently, by quitclaim deed, conveyed its interest in the
> property to a salvage company, that alone is not sufficient to
> establish abandonment.  Because a conclusion that abandonment
> has occurred is so severe because it forever extinguishes the right-
> of-way, even a certificate approving abandonment or that the rail
> line has not been used or has been transferred to a non-railroad
> entity is not sufficient.

Buffalo Township v. Jones, 778 A.2d 1269, 1274 (Pa. Commw. Ct. 2001) ("Buffalo Township

I"), aff'd, 813 A.2d 659 (Pa. 2002), cert. denied, 540 U.S. 821 (2003).  In addition, the

railbanking and interim trail use of a right-of-way under the Trails Act is not treated as an

abandonment of the right-of-way under Pennsylvania law.  See Burnier v. Dept. of Envtl.

Resources, 611 A.2d 1366 (Pa. Commw. Ct. 1992) ("Guided by [Pennsylvania case law] and in

light of the purpose of the National Act to preserve established railroad rights-of-way for future

reactivation of rail service, the inclusion of Conrail's right-of-way in the rail to trail conversion

program is not an abandonment."); Buffalo Township I, 778 A.2d at 1274 (finding that railroad

company's transfer of its right-of-way to a non-railroad entity did not constitute abandonment

where the railroad had retained the right "to re-enter the property and to establish or maintain a

rail line for potential future railroad activities").

The Pennsylvania rule that filing with the STB for authorization to abandon service on a

particular rail line "is not enough in itself" to establish abandonment is consistent with Maryland

law, which also recognizes the distinction between "abandonment"of a railroad right-of-way as a

matter of state law and mere compliance with the federal regulatory scheme set forth in the Trails

Act.  As explained by the Maryland Court of Appeals:

> We believe that appellants unnecessarily confuse the state law question [of
> abandonment] by relying on actions taken by the railroads to comply with

23

> regulatory "abandonment" under federal law. . . . [T]he railroad's actions in pursuing regulatory "abandonment" before the ICC are consistent with an intent to retain its state law property interests; in fact, the railroad's actions are mandated under federal law in order for the railroad to take any action to reduce or eliminate, even temporarily, its common carrier obligations.

Chevy Chase Land Co. v. United States, 733 A.2d 1055, 1086 (Md. 1999). The Maryland court concluded that the railroad's petition was "a prerequisite for a railroad wishing to sell its interests in a right-of-way or to participate in a rails-to-trails agreement. . . ." Id. at 1087. Accordingly, the court concluded that "the decisive act required to carry out the abandonment proponent's burden of proof cannot be supplied by acts entirely consistent with the federal regulatory scheme, which precludes such abandonment." Id. at 1088. The Maryland court further held that "when a railroad takes actions pursuant to federal regulations that are wholly consistent with an intent to retain the property interest, in this case in order to pursue an interim trail use agreement, those actions alone cannot supply the decisive and unequivocal act evidencing an intent to abandon." Id. at 1094.

In this case, A&E's participation in the regulatory proceedings before the STB does not evidence an intent to abandon its interest in the subject right-of-way. To the contrary, following the initial filing of its exemption petition, A&E agreed to negotiate a railbanking agreement with Elk County and Cameron County. The STB subsequently issued a NITU and negotiations have been proceeding since that time with the Counties and, more recently, with the Counties' assignee. See n.7, supra. A&E's participation in these negotiations is entirely voluntary. Nat'l Wildlife Federation, 850 F.2d at 699-702. Indeed, the original NITU authorized the parties to negotiate for a period of 180 days. At the end of that period, A&E was free to cease negotiations and proceed to abandon its line. Joint Ex. 10 (NITU at 2); JSF 15. However, A&E has chosen

24

instead to agree to several extensions of the negotiating period.  Joint Ex. 11; JSF 16-17.

In addition, the NITU in this case expressly provides that "[i]nterim trail use/rail banking is subject to the future restoration of rail service and to the user's continuing to meet the financial obligations of the right-of-way."  Joint Ex. 10 (NITU at 4).  This requirement is consistent with the applicable Trails Act implementing regulations, which require trail sponsors to acknowledge that interim trail use is "subject to possible future reconstruction and reactivation of the right-of-way for rail service."  49 C.F.R. § 1152.29(a)(3).  Accordingly, if a railbanking and interim trail use agreement is reached in this case, A&E or another railroad company will be able to exercise a statutory right of re-entry for the purposes of restoring rail service on the subject right-of-way.[10]  These actions collectively demonstrate that A&E has intentionally refrained from completely divesting itself of all interest in the subject right-of-way.  Under these circumstances, A&E's participation in regulatory proceedings before the STB is insufficient to support a finding of abandonment under state law.[11]

---

[10]The railroad's right to restore rail service has been explained by the STB as follows:

[A]n interim trail use arrangement is subject to being cut off at any time by the reinstitution of rail service.  If and when the railroad wishes to restore rail service on all or part of the property, it has the right to do so, and the trail user must step aside.

Georgia Great S. Div., So. Carolina Cent. R.R.–Abandonment and Discontinuance Exemption–Between Albany and Dawson, in Terrell, Lee, and Dougherty Counties, GA, No. AB-389 (Sub-No. 1X), 2003 WL 21132515, *3  (STB, May 16, 2003).

[11]Similarly, A&E's application to the Pennsylvania Public Utilities Commission ("PUC") for permission to suspend its at-grade highway crossings along the right-of-way is not dispositive of whether A&E has abandoned its right-of-way because, under Pennsylvania law, the PUC's certificate authorizing such a suspension without more does not constitute abandonment. Thompson v. Maryland & Pa. R.R. Preservation Society, 612 A.2d 450 (Pa. Super. 1992), appeal denied, 621 A.2d 581 (Pa. 1992); Lancaster County, 909 A.2d at 916.  Moreover, the PUC's

c.    <u>A&E's Acts Are Consistent With Preserving the Right-of-Way</u>

Although the lack of requisite intent to abandon in this case is sufficient to find there has been no abandonment of the subject right-of-way, Plaintiffs' abandonment argument should also be rejected because A&E has not carried out its alleged intent to abandon by external acts.

For example, A&E was actively using the subject right-of-way for active railroad purposes through late 2001.  JSF 20-23.  Its mere nonuse of the right-of-way since that time for the running of trains is insufficient to establish abandonment under Pennsylvania law.  <u>See</u> <u>Buffalo Township II</u>, 813 A.2d at 665 ("Mere nonuse by the railroad does not amount to abandonment"); <u>Burnier</u>, 611 A.2d at 1368  (same); <u>Quarry Office Park Assocs. v. Phila. Elec.</u> <u>Co.</u>, 576 A.2d 358, 363 (Pa. Super. 1990) ("It is well-settled that nonuse of a rail line does not constitute abandonment. . . .  [F]ailure to operate trains on the line and maintain the line are not indicative of an intent to abandon.").

In addition, although A&E removed the rails and ties from all but approximately 22 feet of the subject right-of-way by the end of 2005 (JSF 26), that action is fully consistent with its contemporaneous efforts to preserve the right-of-way for potential active rail service in the future through the railbanking process.  <u>See</u> 16 U.S.C. § 1247(d); 49 C.F.R. § 1152.29.  Indeed, the NITU issued by the STB states that,

> [c]onsistent with the public use and interim trail use/railbanking conditions imposed in this decision and notice, A&E may discontinue service and salvage track and related materials.  A&E shall otherwise keep intact the right-of-way underlying the tracks, including bridges, trestles, culverts, and tunnels . . . to enable any

---

authorization to suspend the at-grade highway crossings in this case is expressly "without prejudice to the railroad's right to reactivate the subject line at the subject listed crossings . . . upon due notice to all parties of record and to the [PUC] by application."  Joint Ex. 13, p. 7.

> state or local government agency, or other interested persons, to
> negotiate the acquisition of the line for public use.

Joint Ex. 10 (NITU at 3).  Plaintiffs do not contend here that A&E has failed to keep the right-of-

way underlying its tracks, including bridges, trestles, culverts and tunnels "intact" as required by

terms of the NITU.

Notably, on a nearly identical set of facts, the Pennsylvania Supreme Court affirmed the

conclusion that there had been no abandonment of a railroad right-of-way in Buffalo Township

II. There, the railroad had conveyed its interest in a right-of-way to a salvage company, and

subsequently to Buffalo Township for railbanking and interim trail use purposes.  In making

these conveyances, the railroad "expressly retain[ed] the right to reenter the land for future

railroad use . . . ."  813 A.2d at 665.  In concluding that there had been no abandonment of the

right-of-way, the court noted that railroad's negotiations with Buffalo Township over use of the

land and the retention of a right of re-entry "demonstrated [the railroad company's] intent to

*retain* an interest in the right-of-way."  Id., 813 A.2d at 666 (emphasis in original).  See also

Vieux v. East Bay Reg. Park Dist., 906 F.2d 1330, 1341 (9th Cir.) ("Conveyance of property and

abandonment of property are not consistent actions"), cert. denied, 498 U.S. 967 (1990); Birt v.

STB, 90 F.3d 580, 585-86 (D.C. Cir. 1996) (finding that railroad did not consummate

abandonment by the salvage of its track and track materials where the railroad continued its

"rails-to-trails" negotiations).

In sum, A&E's actions in this case demonstrate an intent to keep the subject right-of-way

intact and available for railroad use, rather than to abandon the right-of-way permanently.

27

d.    Plaintiffs' Reliance on *Chew v. Commonwealth* is Misplaced

Although Plaintiffs rely on the case of Chew v. Commonwealth, 161 A.2d 621 (Pa. 1960), that reliance is misplaced because Chew is distinguishable on several grounds.  First, the discussion of abandonment in Chew took place in the context of determining whether and how a damages award for the condemnation of a railroad right-of-way should be apportioned as between the railroad, as the holder of a fee simple defeasible interest in the right-of-way, and the owners of the possibility of reverter in the same land.  In that context, the Chew court simply concluded that because the railroad's abandonment of the right-of-way was "imminent and probable at the time of the condemnation," it should apportion the condemnation award between the railroad company and the owners of the possibility of reverter.[12]

Second, even to the extent that the Chew decision can be read as finding that abandonment would have occurred after the railroad obtained authorization from the PUC to abandon its street service and facilities and then in fact did cease all service on the line, the case does not aid Plaintiffs here because the railroad in Chew did not retain any interest in or rights to the right-of-way at issue in that case.  Here, A&E still holds title to the subject right-of-way and, if a railbanking and interim trail use agreement is reached, A&E (as well as other railroad companies) will have the statutory right to re-enter the right-of-way for the purposes of restoring

_____

[12]In contrast to Chew, in another case where there was no intent by the railroad to abandon at the time of condemnation by a redevelopment authority, the Pennsylvania Court of Common Pleas held that the railroad company was entitled to all of the condemnation award and the holder of the reversionary interest was not compensated because that interest had no ascertainable market value at the time of the taking.  In re: Condemnation by Redevelopment Auth., 20 Pa. D. & C.3d 430 (Pa. Ct. of Common Pleas 1981).  This decision reflects the fact that, under Pennsylvania law, reversionary interests in railroad rights-of-way are very limited property interests.

active rail service at any time during the railbanking period.

Finally, since there was no railbanking component in the <u>Chew</u> case, that decision does not answer the question of whether railbanking is a "railroad purpose" under Pennsylvania law. This is a critical issue in this case because, as discussed above in Section III.B.2., if railbanking constitutes a railroad purpose or use under Pennsylvania law, then the railbanking of this corridor falls within the scope of the Railroad's right-of-way and does not extinguish that right-of-way as a matter of state law.

For all of these reasons, Defendant submits that A&E's actions are fully consistent with and establish an intent to keep the subject right-of-way intact and available for railroad use, rather than to abandon it permanently. Accordingly, even in the absence of the preclusive effect of the Trails Act, there has been no abandonment of the subject right-of-way under Pennsylvania law.

> 4. <u>Under The Doctrine of Shifting Public Uses, the Shift From Active Rail Use to Railbanking and Interim Trail Use Does Not Terminate The Easements</u>

Even if railbanking and interim trail use were held not to be uses that fall within the scope of the subject right-of-way, under the long recognized doctrine of shifting public uses the right-of-way can be converted from one public use (active rail service) to another (railbanking and interim trail use) without causing a termination of the right-of-way and a corresponding reversion of any underlying interests in the land.

Again, the railroad right-of-way at issue here was acquired under the Railroad's 1837 charter from the Commonwealth (Def. Ex. 1), and under the General Railroad Law of 1849 (Joint Ex. 4). Even at that time, adaptation of a railroad's right-of-way to accommodate new public use

was understood not to trigger an abandonment:

> The property [taken by a railroad] is, however, to be deemed taken
> for a public use itself, rather than for the peculiar use and
> enjoyment by the party to whose possession it passes.  It does not
> therefore revert to the owner upon a mere transfer of the railroad to
> another company, nor upon its appropriation to another similar
> public use.

E. Pierce, A Treatise on the Law of Railroads 158 (1881).

This long-standing principle is also evident in Pennsylvania case law, a review of which

demonstrates that Pennsylvania recognizes the doctrine of shifting public uses (if not in name,

then at least in principle), and allows a shift in use for a right-of-way so long as that use

continues to be of a public nature.  For example, in Payne v. Kassab, 361 A.2d 263, 269 (Pa.

1976), the court stated that "diversion of dedicated land from one public use to another may be

approved in a proper case."  In addition, as a public highway, a railroad is treated similarly to a

public street or road, which, according to the Supreme Court of Pennsylvania, "may be used for

any public service without additional or further compensation due an abutting landowner."

Smith v. Adams, 523 A.2d 788, 789 (Pa. Super. 1987).  Further, "[a]n abutting landowner, even

though he or she may own the fee underlying the public right of way, does not have the power to

veto uses of the public road which have been duly authorized by public authority."  Id. at 790.

This result grows naturally out of the fact that "when any public road is established, it is clearly

for the purpose of public travel and commerce."  Pittsburgh Nat'l Bank v. Equitable Gas Co., 220

A.2d 12, 16 (Pa.), cert. denied, 385 U.S. 988 (1966).

The law in Pennsylvania also recognizes that the needs of society evolve over time, and

what was initially envisioned as necessary to meet a public need may require supplementation or

alteration at a later date.  See, e.g., Pittsburgh Nat'l Bank, 220 A.2d at 16 ("When roads were

30

established for public use generations ago, it is hard to believe that the multiple uses now made thereof were envisioned or considered"). These "[e]volutionary changes must be considered in determining whether a burden is imposed on the servient tenement." Id.

Pennsylvania law expressly recognizes that railbanking and interim trail use of railroad rights-of-way are valid and important public uses of such corridors. See Pennsylvania Rails to Trails Act, 32 P.S. §§ 5611-5622. As such, the current preservation of the subject right-of-way for future rail use (railbanking) and the interim trail use of the right-of-way are public uses that, under the doctrine of shifting public uses, are permissible under Pennsylvania law, and do not interfere with or constitute a taking of Plaintiffs' limited reversionary interest in the right-of-way.

For each of the reasons set forth above in Sections III.B.1.–III.B.4., even where the Railroad acquired a right-of-way for railroad purposes or a fee simple determinable, and the Plaintiffs retained some form of a reversionary interest in the subject right-of-way, the railbanking and interim trail use of the corridor authorized by the Trails Act are permissible uses under Pennsylvania law that do not infringe upon the reversionary interests in a manner that constitutes a taking of those interests within the meaning of the Fifth Amendment. Accordingly, summary judgment should be granted in favor of the United States.

## IV.    CONCLUSION

For the reasons discussed here, Defendant respectfully requests that the Court deny

Plaintiffs' motion for partial summary judgment on liability (Doc. 25) and grant Defendant's

cross-motion for summary judgment.

Dated: January 18, 2007

Respectfully submitted,

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment & Natural Resources Division

s/Kristine S. Tardiff
KRISTINE S. TARDIFF  (NH10058)
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
53 Pleasant Street
Concord, NH 03301
TEL: (603) 230-2583
FAX: (603) 225-1577

KELLE S. ACOCK (TX24041991)
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 663
Ben Franklin Station
Washington, DC 20044-0663

OF COUNSEL:
ELLEN D. HANSON, General Counsel
EVELYN KITAY, Attorney
Surface Transportation Board
Office of the General Counsel
Washington, D.C. 20423