# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA
### ERIE DIVISION

| | |
|---|---|
| ROBERT TROHA and FREDERICK BIGNALL on behalf of themselves and all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) |
| vs. | ) |
| | ) Civil Action No. 05-191-E |
| THE UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**PLAINTIFFS' MEMORANDUM OPPOSING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON LIABILITY**

David A. Cohen
THE CULLEN LAW FIRM
1101 30th Street, N.W., Suite 300
Washington, D.C. 20007
Tel: (202) 944-8600
Fax: (202) 944-8611

Attorneys for Plaintiffs and the Class

February 9, 2007

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      A.    But For the Application of the Rails-to-Trails Act, A & E Would Have Been
            Deemed to Have Abandoned the Rail Corridor. . . . . . . . . . . . . . . . . . . . . . . . . . 3

      B.    The Commonwealth of Pennsylvania Retains No Interest In The Right-of-Way As
            A "Highway" Under The 1849 Railroad Act. . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      C.    Railbanking and Interim Trail Use Are Not Encompassed Within the Scope of
            The Easements.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

            1.    *Warranty Deeds with "As Long As" Language (Stipulations Regarding
                  Title Matters; Category 2)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

            2.    *Grant Deeds With Release Language (Second Set of Stipulations
                  Regarding Title Matters)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

            3.    *Easements Created by Condemnation (Category 6).* . . . . . . . . . . . . . . . 12

      D.    The Court Should Reject Defendant's Shifting Public Use Argument . . . . . . . . 15

      E.    Plaintiffs Do Not Oppose Summary Judgment in Favor of Defendant for Those
            Parcels in Which the Railroad Acquired a Fee Simple Interest.. . . . . . . . . . . . . 18

III.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Glosemeyer v. United States*,

    45 Fed. Cl. 771 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4

*Preseault v. United States*, ("*Preseault I*")

    494 U.S. 1 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Preseault v. United States*, ("*Preseault II*")

    100 F.3d 1525 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 16, 17, 18

*Toews v. United States*,

    53 Fed. Cl. 58 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Toews v. United States*,

    376 F.3d 1371, 1376-77 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 15

## STATE CASES

*Brookbank v. Benedum-Trees Oil Co.*,

    131 A.2d 103 (Pa. 1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 14

*Buffalo Township v. Jones*, ("*Buffalo Township I*")

    813 A.2d 659 (Pa. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8

*Buffalo Township v. Jones*, ("*Buffalo Township II*"),

    813 A.2d 659 (Pa. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Chew v. Com.*,

    161 A.2d 621 (Pa. 1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 14, 18

*Dellach v. DeNinno*,

    862 A.2d 117, 117  (Pa. Super. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Fleck v. Universal-Cyclops Steel Corp.*,

    156 A.2d 832 (Pa. 1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Lacey v. Montgomery*,

    124 A.2d 492 (Pa. Super. 1956) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Payne v. Kassab*,

    361 A.2d 263 (Pa. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Pittock v. Central Dist. & Printing Telegraph Co.*,

    1906 WL 3819 (Pa. Super. 1906) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Pittsburgh Nat'l Bank v. Equitable Gas Co.*,

    220 A.2d 12 (Pa. 1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Smith v. Adams*, 523 A.2d 788

    (Pa. Super. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Western Pa. R.R. Co. v. Johnston*,

    59 Pa. 290, 1869 WL 7468 (1868) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

I.     **INTRODUCTION**

The Court should reject Defendant's arguments in opposition to Plaintiffs' motion for partial summary judgment on liability.

First, Defendant seeks to shield itself from a Trails Act-related taking through the use of the Trails Act itself.  Thus, Defendant argues that "interim trail use" under the Act does not constitute abandonment of the rail corridor under Pennsylvania law.  Similarly, Defendant argues that "railbanking" under the Trails Act is a "railroad purpose" under Pennsylvania law, meaning that "the railbanking of the subject right-of-way" is within the scope of the easement.

The Government has lost sight of the proper standard to be used here.  Whether the Trails Act effects a taking in such a case depends "upon the nature of the state-created property interest that petitioners would have enjoyed absent the federal action and upon the extent of that the federal action burdened that interest."  *Preseault v. United States,* 494 U.S. 1, 24 (1990).  "In other words, if the railway easements would have been extinguished but for the application of the Rails-to-Trails Act, then a new easement for a recreational trail has been imposed."  *Glosemeyer v. United States*, 45 Fed. Cl. 771, 776 (2000).

Second, the Government suggests that Pennsylvania's state Rails-to-Trails Act shields the United States from any takings liability.  Putting aside the factual problem that the Pennsylvania Act was never employed in this case, the Government's attempt to use a state law that promotes trail use is without merit.  This argument was rejected by the Court of Appeals for the Federal Circuit and should be rejected by this Court as well.

At the same time, Defendant's argument that no abandonment occurred in this case should be rejected.  The railroad, Allegheny & Eastern, ("A & E"), stated that it was

economically unfeasible to continue using the corridor for railroad purposes, and applied for abandonment before the STB. A & E has removed the tracks and ties, removed its at-grade crossings, making it physically impossible for the corridor to be used for railroad purposes.

Defendant is also incorrect in its assertion that the Commonwealth has retained an interest in the portion of the corridor that was condemned under the Railroad Act of 1849. Defendant ignores well-established Pennsylvania precedent that holds that land acquired under the Railroad Act gave the railroad only an easement or conditional fee for railroad purposes. Similarly, the notion that the Act transformed the railroad corridor into a state highway has no basis in law or fact. The Commonwealth has taken no steps to designate the former rail corridor at issue as a state highway and it would be virtually impossible to do so as state law bars the Commonwealth from prohibiting vehicular traffic on a state highway.

The Court should also reject Defendant's attempt to rewrite Pennsylvania property law by finding that recreational trail use is encompassed within the existing easements or that Pennsylvania would recognize a "shifting public use." Defendant would have the Court create new law on the scope of railroad easements that would radically depart from the existing law of the Commonwealth.

Finally, the Court should find that the Government's actions, the issuance of trails orders by the STB, precluded abandonment under state law, and prevented Plaintiffs and Class members from obtaining the possession and enjoyment of the corridor. As a result, the Government should be held liable for a taking under the Fifth Amendment to the Constitution.

## II.    ARGUMENT

### A.    But For the Application of the Rails-to-Trails Act, A & E Would Have Been Deemed to Have Abandoned the Rail Corridor.

Defendant disputes Plaintiffs' assertion that A & E has demonstrated its intent to abandon the railroad corridor at issue.  Plaintiffs asserted that A & E's intent to abandon is demonstrated by its filing with the Surface Transportation Board ("STB") and by the combined effect of its external acts; i.e. no train service on the line since 2001, the railroad's removal of the rails and the ties, and the removal of at-grade crossings.

Defendant argues instead that  that "A & E's actions in this demonstrate that A & E has not abandoned the subject right-of-way."  Def. Mem. at 21.  Defendant argues that each of these facts, taken singularly, does not support a finding of abandonment.  Defendant fails to consider the effect of these external acts in combination.

Plaintiffs submit that their approach, considering abandonment based on the combined effect of the railroad's external acts,  is supported by precedent.  *See Dellach v. DeNinno*, 862 A.2d 117, 117  (Pa. Super. 2004)(affirming finding of trial court that railroad right-of-way was abandoned under Pennsylvania law where railroad sought abandonment from ICC and removed the tracks from the right-of-way.)  Similarly, in *Toews v. United States*, 53 Fed. Cl. 58 (2002), *aff'd* 376 F.3d 1371 (Fed. Cir. 2004), the court held that the railroad's "petition to abandon, coupled with the granting of the permit (albeit subject to the Rails to Trails designation), the removal of the track, and the creation of the trail makes it clear that the original use is at an end, with no remote prospect of resuscitation."  *Id.* at 62 (emphasis added).  As a result, the court held that under California law the corridor had been abandoned.

3

At the same time, Defendant ignores the fact that in its petition with the STB, A & E averred that it had no alternative but to abandon the rail corridor.  According to its Application for Abandonment filed with the STB, A&E stated that since 1985 to the present, there have been "no customers of common carrier freight services located on the Emporium to St. Mary's rail line."  Joint Ex. 6, STB 074.  A&E, also averred that "[n]o service has been provided on this line by Applicant for over two years.  Abandonment of the line will allow Applicant to salvage the tack and materials.  At this time, there appears to be no alternative to the proposed action."  Joint Ex. 6, Environment/Historic Report at 2 (emphasis added).  *See also Glosemeyer*, 45 Fed. Cl. at 777 ("When a railroad's application for abandonment states that there is 'no feasible alternative' to abandonment, that it seeks to 'physically' abandon a rail line, or that it is 'not possible to operate [a] line profitably in the future,' a reader is left with no choice but to conclude that the railroad intends to abandon the rail line.").

Defendant's reliance on the holding of the Pennsylvania Supreme Court in *Buffalo Township v. Jones*, 813 A.2d 659 (Pa. 2002) , is misplaced.  In that case, the railroad (Conrail) conveyed its interest in the corridor by deed to the trail sponsor, Buffalo Township.  The deed read as follows:

> Grantor and Grantee contemplate that Grantor shall (a) operate its trains, cars and engines to or on the land hereinafter described (or any portion thereof), (b) establish or maintain a track connection with Grantee, or (c) provide cars or car service to Purchaser.  (Emphasis added).

*Buffalo Township v. Jones*, 778 A.2d 1269, 1273 (Pa. Commw. 2001)("*Buffalo Township I*").  In addition, under the deed, "Conrail reserved a right to re-enter the property in order to resume its previous railroad activities . . ." *Id.*  On appeal, the Supreme Court of Pennsylvania concluded

that by "expressly retaining the right to reenter the land for future railroad use in the deed" Conrail indicated its intention not to abandon the right-of-way. *Buffalo Township II*, 813 A.2d 659, 647-48.

In this case, as opposed to *Buffalo Township*, A & E has granted no deed to Elk or Cameron Counties, or to the newly identified trail sponsor. Thus, A & E has not expressly retained the right to use the land for future railroad use in a deed.

Thus, the Court should find, that but for the application of the Trails Act, A & E would have been deemed to have abandoned the right-of-way under Pennsylvania law.

**B.     The Commonwealth of Pennsylvania Retains No Interest In The Right-of-Way As A "Highway" Under The 1849 Railroad Act.**

Defendant argues at length that Plaintiffs and Class members have no interest in the right-of-way because the Pennsylvania Railroad Act of 1849 transformed the corridor into a "public highway" in which the Commonwealth retains a seemingly perpetual interest. Defendant's argument fails as it misconstrues the Act of 1849 and ignores considerable precedent to the contrary.

First, it was recognized early in this Commonwealth that a conveyance or a taking by eminent domain of a railroad right-of-way conveys only an easement, and that when the strip of land ceases to be used for the purpose acquired, the rights of the railroad cease and the land reverts to the owner of the fee. If the Government were correct that through the exercise of eminent domain the Commonwealth retained a perpetual interest in a railroad right-of-way, to the exclusion of the successors-in-title of the condemnees, then the decisions of the Supreme Court of Pennsylvania in *Brookbank v. Benedum-Trees Oil Co.*, 131 A.2d 103 (Pa. 1957), *Fleck v.*

*Universal-Cyclops Steel Corp.*, 156 A.2d 832 (Pa. 1959), and *Chew v. Com.*, 161 A.2d 621 (Pa. 1960), would be rendered a nullity, as each of those cases explicitly found that the condemnee's successor-in-title had reversionary interests in the corridor.

Indeed, the Government's argument was implicitly rejected in *Chew v. Com*, 161 A.2d 621 (Pa. 1960). In *Chew*, the Supreme Court stated that when the railroad acquired the right-of-way by condemnation, "the railroad company acquired a fee simple defeasible in the land, that is, a title subject to defeat in the event the railroad company abandoned the land as a railroad right of way." *Id.* at 622. Subsequently, the railroad's successor ceased railroad service on the corridor and substituted bus service in its stead. Contemporaneously, the Commonwealth condemned the property for "highway purposes." *Id.* The court held that "[h]ad it not been for the condemnation by the Commonwealth of the land on November 25, 1955, the title to the controverted property would, on March 22, 1955, by operation of the law of reverter, have vested in the plaintiffs here, successors of Mary J.B. Chew and Martha Brown, the original landowners." *Id.*

The Commonwealth argued before the Supreme Court that the plaintiffs were not entitled to any compensation under the assumption that having one's property taken for highway use is no more dangerous or disturbing than having the same property taken for railroad use. *Id.* at 625. In response, the court asked, "But what is the relevancy of such a question? What possible gain can the plaintiffs derive from the fact that automobiles instead of trains or buses raise dust on their land, which, by operation of law, has become theirs? If the Commonwealth had not condemned the land, the plaintiffs would have acquired a fee simple title to the land on March 22, 1956, when the railroad ceased all use of the right of way." *Id.*

6

If the Commonwealth, through the initial condemnation of the corridor for railroad purposes, had, as Defendant claims, "an expressly reserved interest" in the corridor for "highway purposes," then there would have been no need for the Commonwealth to initiate condemnation proceedings to convert the corridor from railroad to highway purposes. At the same time, if the Commonwealth had a perpetual "highway interest" in the corridor, it certainly would not have been held liable in *Chew* for an additional taking when it condemned the property for highway purposes.[1]

Defendant then argues that under the Railroad Act of 1849, the Commonwealth has "expressly retained" a right to use the corridor for "highway purposes." Defendant ignores a key portion of the statute. Section 18 of the Act states "[t]hat upon the completion of any railroad authorized as aforesaid, the same shall be esteemed a public highway for the conveyance of passengers, and the transportation of freight, subject to such rules and regulations, in relation to the same, and to the size and construction of wheels, cars, and carriages, the weight of loads, and all other matters and things connected with the use of said railroad." (Emphasis added). Given that the federal regulation defining a recreational prohibits automobiles and trucks, it is inconceivable that the trail could serve as a "highway" for the "transportation of freight" consistent with Section 18.

---

[1] Defendant's argument is based primarily upon its misreading of *Lacey v. Montgomery*, 124 A.2d 492 (Pa. Super. 1956). The *Lacey* case is inapposite because that case concerned the rights and property interests of the parties under the doctrine of adverse possession, as opposed to abandonment. In *Lacey*, the plaintiffs claimed that a portion of a railroad corridor condemned under the Act of 1849, not used for railroad right-of-way purposes, was subject to a claim of adverse possession. *Id.* at 497. The court disagreed, stating that "it follows that whatever land was condemned by appropriate legal proceedings is impressed with a public trust against which no adverse possession may run." *Id.*

It should be of little surprise, then, that the same argument advanced by the Government here was expressly rejected by the Commonwealth Court in *Buffalo Township I*.  In that case, the Commonwealth Court found that "the Commonwealth has not adopted the right-of-way for highway purposes, so Buffalo Township cannot use that as an argument that it has a right to use the right-of-way as a trail which it contends is nothing more than a pedestrian highway." *Buffalo Township I*, 778 A.2d at 1275 n.7.

In this case, as in *Buffalo Township I*, there is no evidence in the record that the Commonwealth has adopted the trail as a state highway.  Indeed, it would be problematic for the Commonwealth to do so, as Pennsylvania law provides that, "[e]xcept in the case of emergencies wherein the safety of the public would be endangered, no State highway shall be closed to vehicular traffic, except upon order of the department nor for a longer period than is necessary for the purpose for which such order is issued."  Pa. Stat. Ann. tit. 36, § 670-422 (West 2006).

Similarly, Defendant's argument that, under Section 20 of the Act of 1849, the Commonwealth has transformed the railroad into a recreational trail, is not consistent with either the facts or the law in this case.  Section 20 states that "the legislature hereby reserves the power to resume, alter or amend any charter granted under this act, and take for public use any road constructed in pursuance of such charter."  Defendant also claims that interim trial use is within the scope of the railroad right-of-way because the Pennsylvania Rails to Trails Act, 32 P.S. §§ 5611 - 5622, authorizes the Commonwealth to acquire rights by participating in abandonment proceedings before the ICC, and to transfer its interest in any recreational trail to a local agency. Def. Mem. at 13-14.

Notably, there is nothing in the record to support any of Defendant's claim.  First, the

Pennsylvania legislature has not altered or amended the charter of the Erie & Philadelphia Railroad to transform the railway into a recreational trail.  Second, the Commonwealth has failed to exercise <u>any</u> of the provisions of the Pennsylvania Rails-to-Trails Act regarding this right-of-way.  There is no evidence in the record that the Commonwealth either intervened in the abandonment or trails proceedings before the STB, or that the Commonwealth, at any time, exercised its authority under the state statute to either acquire the property interests by participating in proceedings before the STB.  There is no evidence in the record that the Commonwealth transferred any of its alleged interests in the right-of-way to any local entity, including Elk or Cameron Counties.

Finally, Defendant may not use the Pennsylvania Rails-to-Trails Act as a basis to defeat Defendant's liability.   In *Preseault v. United States*, 100 F.3d 1525 (Fed. Cir. 1996) ("*Preseault II*"), the Court of Appeals for the Federal Circuit rejected a similar argument made by the Government.  In that case, as in the instant case, the court was asked to decide if the application of the Trails Act resulted in taking by the United States.  In *Preseault*, the Government attempted to deflect plaintiffs' takings claim by arguing that a 1982 Vermont statute authorized the state to "retain any unused railroad rights-of-way it owns for future transportation uses, and in the meantime to use them for other public transportation purposes." *Id.* at 1551.  The Federal Circuit rejected this argument, reasoning that "the State could not simply by enactment of a statute immunize itself from the salutary provisions of the Fifth Amendment.  The issue is not whether the State or Federal governments had the power or obligation to do what they did, but whether the Constitution requires that just compensation be paid as a consequence." *Id.* at 1551-52.

Therefore, there is no basis, in either law or fact, for Defendant's assertion that the

9

Commonwealth has retained an interest in the former railroad corridor.

**C.    Railbanking and Interim Trail Use Are Not Encompassed Within the Scope of The Easements.**

Defendant argues that even if A & E would have been deemed to have abandoned the right-of-way, the Government would not be liable for taking of Plaintiffs' and Class members' property interests because the scope of the easements include railbanking and interim trail use. Defendant is asking the Court to depart from established principles of Pennsylvania property law.

Turning first to the easements created by conveyancing instruments, as opposed through condemnation proceedings, the Government arguments that railroad easements under Pennsylvania law are "broader than a common law easement." Def. Mem. at 12. While this may be true, it does not answer the question of whether the conveyancing instruments in this case, deeds that grant the railroad an easement for railroad purposes, also encompass an easement for recreational trail purposes.

Plaintiffs believe that one must look to the documents themselves to determine the answer.

*1.    Warranty Deeds with "As Long As" Language (Stipulations Regarding Title Matters; Category 2)*

The first category of deed which the parties stipulated created reversionary interests are warranty deeds with "as long as" language. (See Stipulations Regarding Title Matters; Category 2). The principal conveyance in this category is a single deed, dated December 6, 1858, from Robert Halsey to the Sunbury and Erie Railroad Company. ("Halsey Deed;" Attached as Exhibit 19). This deed conveyed approximately 35 acres to the railroad.

The granting clause of the Halsey Deed states: "I do for myself, my heirs and assigns,

10

covenant and agree to grant and convey to the said Sunbury and Erie Railroad Company, a strip of land four rods in width <u>as long as the same is used as a Rail Road and when not so used to revert back to Halsey his heirs and assigns."</u> (Exhibit 19; emphasis added). Here, the deed specifically states that the property is conveyed to the railroad "as long as the same is used as a Rail Road . . ." As a result, the easement conveyed in this deed is limited to railroad uses. Thus, there is little merit to Defendant's argument that the easement encompasses recreational trail use.

2.    *Grant Deeds With Release Language (Second Set of Stipulations Regarding Title Matters)*

The parties stipulated that deeds falling within Category 3 - Grant Deeds with Release Language conveyed a right-of-way for railroad purposes under Pennsylvania law. Each of the deeds in this category contain the following language in the granting clause: "and by these presents do grant, bargain sell and convey to [the Railroad] their successors and assigns, <u>for the uses and purposes of said Rail Road</u> . . ." (See Piersall Deed, Ex. 17; Morrison Deed, Ex. 18; Campbell Deed, Ex. 16). Again, the deed specifically limits the use of the property for the uses and purposes of the railroad. There is no basis to conclude that easement includes other uses such as recreational trails.

In *Toews v. United States*, 376 F.3d 1371, 1376-77 (Fed. Cir. 2004), the Court of Appeals for the Federal Circuit noted that "[t]he defining issue in the case is the question of scope of the easements originally granted to the railroad." The deed in that case provided for reversion to the grantor if the property was no longer used a railroad. *Id.*

The Court of Appeals reasoned that "if the Government uses . . . an existing railroad easement for purposes and in a manner not allowed by the terms of the grant of the easement, the

11

Government has taken the landowner's property for the new use." *Id.* The court continued: "Some may think it better to have people strolling on one's property than to have a freight train rumbling through. But that is not the point. The landowner's grant authorized one set of uses, not the other. Under the law, it is the landowner's intention as expressed in the grant that defines the burden to which the land will be subject." *Id.* Thus, the court held that the easement created by the deed did not encompass recreational trail use.

Plaintiffs submit that the reasoning and holding of the *Toews* court is persuasive authority. In this case, as in *Toews*, the deeds at issue clearly limit the scope of the railroad's easement to railroad uses only. There is no language in these deeds allowing any other use, much less recreational trail use.

### 3. *Easements Created by Condemnation (Category 6)*

Turning to the easements created by eminent domain proceedings, it is also clear that such easements do not include easements for recreational trail use. Again, the starting point should be the documents themselves. The record contains the pleadings files from two of the four condemnation proceedings at issue in this case. (See Ex. 20, Burlingham condemnation; Ex. 21, Hubbard condemnation).

In both the Burlingham and Hubbard condemnations, the Railroad filed a petition with the Court of Common Pleas for Cameron County. According to the Railroad's petitions, "it has become necessary and the said Company desire to enter in an up on and to occupy for the purpose of making, constructing and using their said railroad, the land upon which the same is located." The petitions further request that the Board of Viewers "shall estimate and determine the quantity, quality and value of said land so taken and occupied or to be taken and occupied or

12

the materials used or taken away or to used or taken away and having a due regard to and making

just allowances for the advantages which may have resulted or which may result to the owners of

said lands and materials in consequence of the opening or making of said railroad or the

construction of works connected therewith . . ." Thus, the petitions of the Railroad demonstrate

that the condemnation of the landowner's property, and any compensation thereto, was related

solely to railroad uses.

> The Report of the Board of Viewers, stated that the Viewers,
>
> In the presence of the parties proceeded to view the premises in said order
> mentioned, belonging to Samuel Burlingham which the said Phila. & Erie
> Railroad Company propose to take and occupy for the purposes of their road and
> the materials to used and taken by [sic] the for the construction of said road and
> having a due regard to and making just allowance for the advantage which may
> have resulted or which may result to the owner of said land or materials in
> consequence of the opening or making of said Railroad or the construction of
> works connected therewith.

It was on this basis that the Board of Viewers decided what amount of damages, if any, to award.

In Mr. Burlingham's case, the Board recommended an award of $ 150 for 2.97 acres of land

"taken by and for the purposes of said railroad . . ."

There is no basis, upon reviewing the Burlingham and Hubbard condemnation

proceedings in, or in any of the other proceedings at issue in this case, for the Government's

assertion that the land owners were compensated for the taking of their land for all "public

purposes." The condemnation awards clearly demonstrate that the sole use envisioned, and the

sole use for which compensation was paid, was for railroad use.

There are several cases in which the courts of Pennsylvania have stated that

condemnations under the Railroad Act of 1849 are limited to railroad purposes. The first can be

found in the Supreme Court of Pennsylvania's decision in *Western Pa. R.R. Co. v. Johnston*, 59

Pa. 290, 1869 WL 7468, * 4 (Pa. 1868), where the court held that under the Act, "[t]he character

of the interest of the corporation in the land so taken and used for railroad purposes is thus

clearly set forth, in the law itself, but it has also received judicial recognition in numerous cases."

(Emphasis added).  In *Pittock v. Central Dist. & Printing Telegraph Co*., 1906 WL 3819, * 3 (Pa.

Super. 1906), the court held that "[i]t is evident from the provisions of the statute [the Railroad

Act of 1849] that the right which the company acquires is for the purposes of its business only

and that its exclusive and absolute control of the property condemned is limited to railroad uses."

(Emphasis added).  The court concluded that "[t]o subject the land taken to other uses would not

only be without warrant in the statute, but would deprive the owner of his property without just

compensation.  All that was taken from the appellee when the railroad was located across his

farm was the use and possession of his land for railroad purposes." *Id.*  The Supreme Court of

Pennsylvania reaffirmed these holding in *Brookbank*, where it held that "the railroad received

simply a base or conditional fee for railroad purposes which was acquired by eminent domain

procedure" under the Act of 1849.  *Brookbank*, 131 A.2d 103, 112 (1957) (emphasis added).

Finally, as discussed above, the Supreme Court of Pennsylvania's decision in *Chew v.

Com.*, 161 A.2d 621 (1960) specifically rejects the argument that condemnation proceedings

initiated by the railroad encompass other public uses for the right-of-way.  In *Chew*, the

Commonwealth condemned the right-of-way for highway purposes, upon the abandonment of the

right-of-way for railroad purposes.  The Supreme Court rejected the Commonwealth's argument

that the original condemnee's successors-in-title were not entitled to compensation.  The court

stated that "[t]he Commonwealth has presented the strange argument that the plaintiffs should be

satisfied without monetary compensation because in some misty, vague, visionary manner they would benefit from having a highway traverse their land instead of a railroad." The court rejected this argument, reasoning that "[w]hat possible gain can the plaintiffs derive from the fact that automobiles instead of trains or buses raise dust on their land, which, by operation of law, has become theirs?"

Thus, the Court should reject Defendant's argument that the easements, created either by deed or by condemnation under the Railroad Act of 1849, encompassed recreational trail use.

### D.    The Court Should Reject Defendant's Shifting Public Use Argument

The last argument Defendant makes is that even if railbanking and interim trail use were held not be within the scope of the easements, the "long recognized doctrine of shifting public uses" transforms easements for railroad purposes into easements for almost any public use, especially uses for recreational trails. In essence, the Government is asking the Court not only disregard long established principles of Pennsylvania's real property law, it is asking the Court to create, out of whole cloth, a new set of laws that would radically alter Pennsylvania law.

The Government's "shifting public use" argument was rejected by the Federal Circuit in *Toews*. In *Toews*, the court summarized the Government's shifting public use argument as follows: "The Government's argument that a railroad's use of an easement may transmogrify into the public's use as a recreational trail and linear park stands on a doctrine sometimes referred to as the 'shifting public use' doctrine." 376 F.3d at 1377.

The court, applying California law, found no basis in the law of that state to support a "shifting public use." The court held that "a public transportation easement defined as one for railroad purposes is not stretchable into an easement for a recreational trail and linear park for

15

skateboarders and picnickers, however desirable such uses may ne for these linear strips of land." *Id.*

Similarly, the Federal Circuit rejected the same argument in *Preseault II*. The Federal Circuit began its analysis by noting that "[a]s an initial matter, we have found no Vermont case, either in this century or the last, and the parties point to none, in which the Vermont courts establish or apply something called the 'shifting public use' doctrine. 100 F.3d at 1541. The same is true with regard to Pennsylvania. A Westlaw search of Pennsylvania cases going back to the early days of the Commonwealth reveal not a single case in which the phrase "shifting public use" was used.

Moreover, the cases cited by the Government in support of its argument that Pennsylvania has indeed adopted such a doctrine, "if not in name, then at least in principle," are misleading at best. None of the cases cited by Defendant involve a railroad, a railroad easement or the condemnation of a railroad right-of-way. Instead, each of the cases involves public roads or highways and involve entirely distinct legal principles from those that govern railroad right-of-ways.[2] For the Government to assert that these cases justify the application of a "shifting public use" doctrine to railroad rights-of-way in this Commonwealth is completely without merit.

In *Preseault II*, the court reasoned that:

In the absence of a Vermont case on point, we must seek the

_____

[2]None of the cases cited by Defendant involve a railroad right-of-way. *Payne v. Kassab*, 361 A.2d 263 (Pa. 1976)(deciding whether Commonwealth violated statutory dedication of "commons" area by widening street in Wilkes Barre); *Smith v. Adams*, 523 A.2d 788 (Pa. Super. 1987)(issue was whether owner of fee underlying a township road can maintain an action in ejectment against a cable television company); *Pittsburgh Nat'l Bank v. Equitable Gas Co.*, 220 A.2d 12 (Pa. 1966)(deciding whether owner of land abutting public highway was entitled to compensation for gas pipeline installed in right-of-way of a public road.

16

answer in traditional understandings of easement law, recognizing as we must that Vermont follows and applies common law property principles.   The easements involved here are express easements, meaning that the scope of the easements are set out in express terms, either in the granting documents or as a matter of incorporation and legal construction of the terms of the relevant documents.   'The extent of an easement created by a conveyance is fixed by the conveyance.'  5 Restatement of Property § 482 (American Law Institute 1944).   In a leading treatise on the subject, the authors state the general rule to be '[w]hen precise language is employed to create an easement, such terminology governs the extent of usage.'   Jon. W. Bruce and James W. Ely, Jr., The Law of Easements and Licenses in Land ¶ 8.02[1], at 8-3 (rev. ed. 1995).

The general rule does not preclude the scope of an easement being adjusted in the face of changing times *to serve the original purpose,* so long as the change is consistent with the terms of the original grant:

> It is often said that the parties are to be presumed to have contemplated such a scope for the created easement as would reasonably serve the purposes of the grant....  This presumption often allows an expansion of use of the easement, but does not permit a change in use not reasonably foreseeable at the time of establishment of the easement.
> RICHARD R. POWELL, 3 POWELL ON REAL PROPERTY § 34.12[2] (Patrick J. Rohan ed., 1996).

100 F.3d at 1542 (emphasis in original).

The court then asked the following question:

> When the easements here were granted to the Preseaults' predecessors in title at the turn of the century, specifically for transportation of goods and persons via railroad, could it be said that the parties contemplated that a century later the easements would be used for recreational hiking and biking trails, or that it was necessary to so construe them in order to give the grantee railroad that for which it bargained?  We think not.   Although a public recreational trail could be described as a roadway for the transportation of persons, the nature of the usage is clearly different.   In the one case, the grantee is a commercial enterprise using the easement in its business, the transport of goods and people for compensation.   In the other, the easement belongs to the public, and is open for use for recreational purposes, which happens to involve people engaged in exercise or recreation on foot or on bicycles.   It is difficult to imagine that either party to the original

17

transfers had anything remotely in mind that would resemble a public recreational trail.

*Id*. at 1542 - 43 (emphasis added).

Here, there is no basis under Pennsylvania law for the imposition of a "shifting public use" in this case. Pennsylvania law is far more strict than that of California regarding the permissible shifting of use under a railroad easement. Indeed, the Supreme Court of Pennsylvania in *Chew v. Com.* held that than easement for railroad purposes did not allow for use of the corridor for bus or highway use. If, under Pennsylvania law, there is no permissible shift from railroad to bus or highway use, then there is certainly no permissible shifting of use from railroad use to walking or hiking trail use.

Finally, as the Federal Circuit wisely noted in *Preseault II*:

> The concept of 'shifting public use' must be anchored in established precedent, or it becomes little more than speculation about what a hypothetical Vermont court in 1996 might do. <u>Our responsibility here is to apply established law, not make new law</u>. If a dramatic reinterpretation of the scope of the established terms by which railroad easements were historically granted is to be imposed upon Vermont and the parties to this case, it should not be at the hand of a federal appellate court.

100 F.3d at 1544 (emphasis added). In this case, the Court should apply the established law of the Commonwealth of Pennsylvania. It should not engage, at the request of the Government, and *amicus*, in pure speculation that would dramatically reinterpret the scope of railroad easements under Pennsylvania law.

### E.     Plaintiffs Do Not Oppose Summary Judgment in Favor of Defendant for Those Parcels in Which the Railroad Acquired a Fee Simple Interest.

Plaintiffs do not oppose summary judgment in favor of Defendant for those parcels which the parties have stipulated the railroad acquired a fee simple interest. These parcels are identified

18

in the parties' Title Stipulations as those parcels in Categories 1, 5 and part of Category 4.

## III.    CONCLUSION

For the reasons stated above, Plaintiffs respectfully request (1) that the Court grant Plaintiffs' Motion for Partial Summary Judgment on Liability; and (2) that the Court deny Defendant's Motion for Summary Judgment with the exception of the parcels stipulated by the parties to have conveyed a fee simple interest to the Railroad.

Dated: February 9, 2007

Respectfully submitted,

_____

/s/David A. Cohen
_____
DAVID A. COHEN
PA Bar I.D. No. 54342

THE CULLEN LAW FIRM
1101 30th Street, N.W.,
Suite 300
Washington, D.C. 20007
(202) 944-8600

19

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 9th day of February, 2007, the foregoing Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment was electronically filed with the Clerk of the Court using the CM/ECF system, which, in turn, forwarded the same to the following counsel of record.

Kristine S. Tardiff, Esq.
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
53 Pleasant Street, 4th Floor
Concord, NH 03301
Kristine.Tardiff@usdoj.gov


/s/David A. Cohen

20