IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT TROHA and FREDERICK BIGNALL, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | Civil Action No. 05-191 E |

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF ITS
CROSS-MOTION FOR SUMMARY JUDGMENT**

    MATTHEW J. McKEOWN
    Acting Assistant Attorney General
    Environment & Natural Resources Division

    KRISTINE S. TARDIFF (NH 10058)
    United States Department of Justice
    Environment & Natural Resources Division
    Natural Resources Section
    53 Pleasant Street, 4th Floor
    Concord, NH 03301
    TEL: (603) 230-2583
    FAX: (603) 225-1577

    KELLE S. ACOCK (TX24041991)
    United States Department of Justice
    Environment & Natural Resources Division
    Natural Resources Section
    P.O. Box 663
    Ben Franklin Station
    Washington, DC 20044-0663

OF COUNSEL:
ELLEN D. HANSON, General Counsel
EVELYN KITAY, Attorney
Surface Transportation Board
Office of General Counsel
Washington, D.C. 20423

    February 23, 2007

**TABLE OF CONTENTS**

I.   Plaintiffs Have Not Opposed Defendant's Motion for Summary Judgment
     as to Those Parcels in Which the Railroad Acquired Fee Simple Title. . . . . . . . . . . . . . . . . 1

II.  Defendant's Motion for Summary Judgment Should Be Granted as to Those
     Parcels in Which the Railroad Acquired Either a Right-of-Way or Fee Simple
     Determinable Interest. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     A.   There is No Dispute Over the Legal Standard to
          be Applied to Plaintiffs' Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     B.   Railbanking Is a Railroad Use and a Use That Serves Railroad Purposes.. . . . . . . 3

     C.   Interim Trail Use is a Permissible Use of the Subject
          Right-of-Way. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

          1.   Category 2 Deeds. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

          2.   Category 3 Deeds. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

          3.   Category 6 (Condemnations). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

     D.   The Railroad Has Not Abandoned the Subject Right-of-Way.. . . . . . . . . . . . . . . 12

     E.   Shifting Public Uses.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

III. Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**TABLE OF AUTHORITIES**

**CASES**

Barney v. Burlington N. R.R. Co., Inc.,
    490 N.W.2d 726 (S.D. 1992)................................................... 9

Buffalo Township v. Jones,
    813 A.2d 659 (Pa. 2002). ............................................... 12, 13

Caldwell v. United States,
    391 F.3d 1226(Fed. Cir. 2004), cert. denied, 126 S. Ct. 366 (2005)................ 2, 7

Chevy Chase Land Co. v. United States,
    733 A.2d 1055 1076 (1999)................................................... 9

Chevy Chase Land Co. v. United States,
    37 Fed. Cl. 545 (1997)....................................................... 9

Chevy Chase Land Co. v. United States,
    158 F.3d 574 (Fed. Cir. 1998)................................................ 9

Chevy Chase Land Co. v. United States,
    Nos. 97-5079, 97-5083, 1999 WL 1289099 (Fed. Cir. Dec. 17, 1999)................ 9

Lacy v. Montgomery
    124 A.2d 492 (Pa. Super. 1956)............................................... 10

Pittock v. Central District & Printing Telegraph Company,
    31 Pa. Super. 589 (Pa. Super. 1906). ..................................... 11, 12

Preseault v. United States,
    100 F.3d 1525 (Fed. Cir. 1996)............................................... 14

Rieger v. Penn Cent. Corp.,
    507 U.S. 914 (1993) (Ct. App. Greene County,
    Ohio, May 21, 1985). ........................................................ 9

Toews v. United States,
    376 F.3d 1371 (Fed. Cir. 2004)............................................... 8

Washington Wildlife Pres., Inc. v. State of Minnesota,
    329 N.W.2d 543, 547 (Minn. 1983)

cert. denied, 463 U.S. 1209 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Western Pennsylvania Railroad Company v. Johnston,
    59 Pa. 290, 1869 WL 7468 (Pa. 1868). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**STATUTES**

16 U.S.C. § 1247(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 13

45 U.S.C. § 801. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Defendant hereby submits its reply memorandum in response to Plaintiffs' opposition memorandum (Doc. 39) and in support of its motion for summary judgment. As set forth in Section I, Plaintiffs have not opposed Defendant's motion with respect to those parcels acquired by the Railroad in fee simple, and summary judgment should therefore be entered in favor of Defendant as to those claims. As set forth in Section II, Defendant's motion for summary judgment as to Plaintiffs' remaining claims should be granted because, under Pennsylvania law, (1) both railbanking and interim trail use are permissible uses of the subject right-of-way, (2) there has been no abandonment of the subject right-of-way, and (3) the shift in public use from active railroad use to preservation for future railroad use is permissible.

I.  <u>Plaintiffs Have Not Opposed Defendant's Motion for Summary Judgment as to Those Parcels in Which the Railroad Acquired Fee Simple Title</u>

Defendant moves for summary judgment as to the claims involving those properties in which the Railroad acquired a fee simple absolute interest on the ground that Plaintiffs have no ownership interest in these properties and thus no standing to assert that such properties have been taken. Def's SJ Mem. at 4-5 (dated Jan. 18, 2007) (Doc. 34). Plaintiffs do not oppose this portion of Defendant's motion. Pls' Opp. Mem. at 18-19 (Feb. 9, 2007) (Doc. 39). Accordingly, summary judgment should be entered in favor of the United States as to the claims involving the properties identified in the parties' Title Stipulations in Category 1 (warranty deeds), Category 5 (unrecorded or lost deeds) and part of Category 4 (donation and release deeds). <u>See</u> Stipulations Regarding Title Matters (Joint Ex. 2); Stipulated Categories (Joint Ex. 3).

II. <u>Defendant's Motion for Summary Judgment Should Be Granted as to Those Parcels in Which the Railroad Acquired Either a Right-of-Way or Fee Simple Determinable Interest</u>

For the remaining parcels of land, the parties have stipulated that, under Pennsylvania

1

law, the Railroad acquired either a right-of-way for railroad purposes or a fee simple determinable. Joint Ex. 2-3; Second Set of Title Stipulations (Doc. 28). Summary judgment in favor of Defendant is warranted with respect to these parcels because, for each of the reasons discussed below and in Defendant's opening brief, the operation of the Trails Act does not constitute a taking of the limited reversionary interests held in the subject right-of-way by the class members in this case.

  A.  There is No Dispute Over the Legal Standard to be Applied to Plaintiffs' Claims

Contrary to Plaintiffs' assertions, there is no dispute regarding the proper legal standard to be applied in this case. The operative language of the Trails Act provides in relevant part that,

> Consistent with the purposes of [the Railroad Revitalization and Regulatory Reform Act of 1976, 45 U.S.C. § 801 et seq.], and in furtherance of the national policy to preserve established railroad rights-of-way for future reactivation of rail service, to protect rail transportation corridors, and to encourage energy efficient transportation use, in the case of interim use of any established railroad rights-of-way pursuant to donation, transfer, lease, sale, or otherwise in a manner consistent with this chapter, if such interim use is subject to restoration or reconstruction for railroad purposes, such interim use shall not be treated, for purposes of any rule of law, as an abandonment of the use of such rights-of-way for railroad purposes.

16 U.S.C. § 1247(d). By providing that interim use of a right-of-way "shall not be treated, for purposes of any rule of law, as an abandonment of the use of such rights-of-way for railroad purposes[,]" the Trails Act "prevents the operation of state laws that would otherwise come into effect upon abandonment–property laws that would 'result in extinguishment of easements for railroad purposes and reversion of rights of way to abutting landowners.'" Caldwell v. United States, 391 F.3d 1226, 1239 (Fed. Cir. 2004) (citation omitted), cert. denied, 126 S. Ct. 366 (2005).

2

The question presented in this case is whether, but for the preclusive effect of the Trails Act, the subject right-of-way would be deemed abandoned or otherwise extinguished under Pennsylvania law. Otherwise stated, the preclusive effect of the Trails Act is only triggered to preserve and protect the rail transportation corridor from being lost if railbanking or interim trail use or both present uses result in the extinguishment of the right-of-way as a matter of Pennsylvania law because such uses exceed the scope of the right-of-way or if the Railroad would be deemed to have abandoned the right-of-way as a matter of Pennsylvania law but for the preclusive effect of federal law. If, however, the present uses (railbanking and interim trail use) are permissible uses of the right-of-way that do not exceed the scope of the right-of-way, then such uses do not interfere with the reversionary interests in the right-of-way in a manner that constitutes a taking. Similarly, if the actions taken by the Railroad do not constitute an abandonment of that right-of-way as a matter of Pennsylvania law, then the operation of the Trails Act does not result in a taking.

In this case, as explained in Defendant's opening memorandum and in this reply brief, the preclusive language of the Trails Act is not triggered because there has been no abandonment of the right-of-way as a matter of Pennsylvania law, nor do the uses of the right-of-way authorized by the Decision and Notice of Interim Trail Use ("NITU") (railbanking and interim trail use) exceed the scope of the rights-of-way.

    B.    <u>Railbanking is a Railroad Use and a Use That Railroad Purposes</u>

The Trails Act authorizes two distinct present uses of the rights-of-way at issue in this case: (1) the preservation of a railroad corridor or right-of-way for future rail use (<u>i.e.</u>, railbanking), and (2) interim trail use. Def.'s Mem. at 15-16. Plaintiffs' opposition brief is

notable for its complete failure to address the question of whether railbanking is a railroad use or serves a railroad purpose. Instead, Plaintiffs' arguments regarding the scope of the subject right-of-way focus on interim trail use alone. See Pls.' Opp. at 10-15.

As explained in Defendant's opening memorandum, the term railbanking refers to the preservation of a railroad corridor for future rail use. Def. Mem. at 15-17. Railbanking is an independent and legitimate present use of the subject right-of-way and, despite Plaintiffs' decision to ignore this use and attempt to focus the Court's attention on interim trail use alone, the resolution of Defendant's motion for summary judgment requires the Court to determine whether railbanking serves a railroad purpose or is itself a railroad use and thus falls within the scope of the right-of-way acquired by the Railroad. Accordingly, for the reasons set forth in Defendant's opening memorandum, the Court should find that railbanking serves a railroad purpose or is a railroad use, that railbanking thus falls squarely within the scope of the subject right-of-way as a matter of Pennsylvania law, and that the railbanking of the subject right-of-way does not constitute a taking of any reversionary interests held by the class members in this case.

   C.  <u>Interim Trail Use is a Permissible Use of the Subject Right-of-Way</u>

Although Plaintiffs do not present any arguments regarding railbanking, they do contend that the subject right-of-way is limited to railroad uses or purposes and that interim trail use exceeds that limitation and thus constitutes a taking. Pls.' Opp. at 10-15. Plaintiffs' arguments should be rejected because the rights-of-way granted to the Railroad by deed or acquired by condemnation are not strictly limited to active rail use. Alternatively, even to the extent that the use right-of-way is found to be limited to railroad purposes or uses, interim trail use qualifies as such a use because it is incidental to and in furtherance of the preservation of the corridor for

future active rail use.

    1.    <u>Category 2 Deeds</u>

There is no dispute that the Category 2 deeds conveyed a fee simple determinable interest to the Railroad that would revert to the original grantors if the land ceased to be used for railroad purposes. Plaintiffs assert, with little analysis, that interim trail use is not a railroad purpose within the meaning of these deeds. This argument should be rejected because the right-of-way granted by the Category 2 deeds is not so limited.

For example, in one of the Category 2 deeds the parties defined railroad purposes in the habendum clause. That clause provides that the land was conveyed to the Railroad

> TOGETHER with the free and uninterrupted right and privilege of passing at all times hereafter forever, ove[r], through, and along the same, <u>with or without</u> locomotives, passenger, freight, baggage, mail or other cars; AND TOGETHER with the right, liberty and privilege of constructing, erecting, maintaining and using, upon the said above described strip or piece of land, any and all such depots or station houses, warehouses, offices, engine houses, water, telegraph or signal stations, or other buildings and appurtenances; branches, sidings, turnouts, bridges, viaducts, or other devices, <u>as the said [Railroad] Company may deem necessary or useful for or in connection with the construction, maintenance, operation, and repair of the said Railroad and appurtenances</u>.

Def. Ex. 9 (the "Keystone Deed") (emphasis added).[1] By broadly defining railroad purposes in this manner, the grantors clearly intended to grant the Railroad a broad and unrestricted right of passage that included any and all uses that are related or incidental to the use of the right-of-way as a railroad. In this case, the Railroad has elected to negotiate a railbanking and interim trail use agreement with an authorized trail sponsor and the Surface Transportation Board ("STB") has

---

[1] Defendant's exhibits 1 through 8 are contained in the appendix (Doc. 35) filed in support of Defendant's cross-motion for summary judgment (Doc. 34).

issued a decision – the NITU – that authorizes both railbanking and interim trail use in accordance with the Trails Act. If an agreement is reached and interim trail use is implemented, that use serves a railroad purpose by allowing the preservation of the right-of-way for active rail use through the railbanking process. Interim trail use would also continue the use of the lands conveyed under the Keystone deed as a public right-of-way. The present mode of passage may not involve the running of trains, but this deed allows passage "with or without" rail cars. For each of these reasons, the Court should find that interim trail use is a permissible use of the subject right-of-way. See Def. SJ Mem. at 17-20.

       The Halsey deed cited by Plaintiffs (Ex. 19) is similar to the Keystone deed in that it conveys a fee interest in strip of land to the Railroad for railroad purposes and provides for a reversion to the original grantor or his heirs or assigns if the land is not so used. However, unlike the Keystone deed, the Halsey deed does not attempt to define what uses of the land qualify as railroad purposes or uses and, correspondingly, what uses by the Railroad or its assigns would trigger the reversionary clause therein. Although the deed doesn't define railroad purposes, the Pennsylvania statutes that authorized the incorporation of the Railroad gave the company the broad rights with respect to the acquisition and use of lands in connection with the establishment and maintenance of its railroad. See Def. Mem. at 9-13. Consistent with the more detailed language found in the Keystone deed, the authorizing legislation granted the Railroad broad authority to take actions which it "may deem proper and necessary for the purposes of transportation[.]" Id. at 10 (quoting the Act of March 15, 1847, Sec. 1 (Def. Ex. 2)). In addition, Pennsylvania case law establishes that railroad rights-of-way are "impressed with a public use" and constitute a "public highway." Def. Mem. at 9-13. The Railroad's right to use the right-of-

way, though subject to this public trust, otherwise includes a right to exclusive possession and a right to use the right-of-way in any manner that it deems proper and necessary for railroad purposes, including transportation purposes.  Id.

Here, after nearly 140 years of active rail use of the right-of-way (JSF ¶¶ 3, 20-23), the Railroad decided to participate in a railbanking process.  Railbanking serves a railroad purpose by preserving the right-of-way for future active rail use.  In the interim, use of the right-of-way as a trail is authorized by the NITU.  If such use is implemented in this case, that incidental use of the right-of-way furthers railroad purposes.  Trail use is also a public transportation use of the right-of-way and is therefore consistent with the public purposes for which this right-of-way was originally established.  See Def. Mem. at 17-20.  Accordingly, the authorization to allow interim trail use of the subject right-of-way does not exceed the scope of the right-of-way created by the Category 2 deeds.  Plaintiffs' attempt to read restrictive language into those deeds where there is none should be rejected.

        2.       <u>Category 3 Deeds</u>

Plaintiffs erroneously argue that language in the referenced Category 3 deeds granting a right-of-way "for the uses and purposes of said Rail Road" is limiting language that does not include or allow interim trail use.  Pls.' Opp. at 11.  This strained interpretation of the Category 3 deeds suffers from the same cursory and conclusory analysis as Plaintiffs' interpretation of the Category 2 deeds, and should be rejected.

First, the Category 3 deeds – like the Halsey deed discussed above – do not define what uses of the right-of-way would qualify as uses that serve railroad purposes.  Accordingly, the deeds themselves do not provide a basis for concluding that interim trail use does not serve a

railroad purpose. However, as discussed above with respect to the Category 2 deeds, reference to the Railroad's authorizing legislation, the fact that the right-of-way is impressed with a public use and constitutes a public highway, and the broad rights granted to the Railroad to use the right-of-way in any manner that it deems proper and necessary for railroad purposes, including transportation purposes, supports the conclusion that interim trail use is a permissible use of the subject right-of-way.

Second, the interpretation of the deeds at issue is a question of Pennsylvania state law. Plaintiffs' narrow interpretation of the Category 3 deeds rests solely on the decision in <u>Toews v. United States</u>, 376 F.3d 1371 (Fed. Cir. 2004), in which the Federal Circuit concluded that interim trail use exceeded the scope of easements conveyed to a railroad by the deeds at issue in that case *as a matter of California state law*. Accordingly, <u>Toews</u> is not controlling in this case, nor do Plaintiffs cite any Pennsylvania case law in their analysis of the Category 3 deeds to support their assertion that "railroad purposes" must be narrowly defined to exclude interim trail use.

Moreover, to the extent that the Court is inclined to look beyond Pennsylvania law for guidance, Defendant notes that <u>Toews</u> is not the panacea that Plaintiffs' repeated citation to it suggests. Indeed, numerous courts applying the law of other states have concluded that both railbanking and interim trail use are permissible uses of railroad rights-of-way. For example, in <u>Chevy Chase</u>, the Court of Appeals of Maryland, answering questions certified to it by the Federal Circuit, held:

> We believe it indisputable that use of the right-of-way as a trail is consistent with its essential nature relating to the "pass[ing] over land of another" and is a reasonable use of a general right of way. Accordingly,

> the scope of the right-of-way in the instant case encompasses use as a hiker/biker trail.
>
> * * *
>
> The fact that the right-of-way may be used for recreational as well as transportation purposes has no bearing on our analysis, since the "recreation" involved – biking and hiking – consists of the enjoyment one may have in transporting oneself. . . . Indeed, that hiking and biking may be recreational in addition to fulfilling transportation needs is not all that different from the enjoyment that some derive from driving a car or even riding a train; the enjoyment that some derive from these activities does not detract from their essential character as transportation-related.

Chevy Chase Land Co. v. United States, 733 A.2d 1055, 1076-1079 (Md. 1999), *answering questions certified by* Chevy Chase Land Co. v. United States, 158 F.3d 574 (Fed. Cir. 1998). Accepting the state court's ruling and applying it to the takings claims before it, the Federal Circuit affirmed the trial court's holding that the railbanking and interim trail use of the railroad easement at issue in Chevy Chase did not constitute a taking of the servient estate holder's property interests. Chevy Chase Land Co. v. United States, Nos. 97-5079, 97-5083, 1999 WL 1289099 (Fed. Cir. Dec. 17, 1999), *affirming* Chevy Chase Land Co. v. United States, 37 Fed. Cl. 545 (1997). Courts applying the law of other states have reached the same conclusion. See Washington Wildlife Pres., Inc. v. State of Minnesota, 329 N.W.2d 543, 547 (Minn. 1983) ("Recreational trail use of the land is compatible and consistent with its prior use as a rail line, and imposes no greater burden on the servient estates."), cert. denied, 463 U.S. 1209 (1983); Barney v. Burlington N. R.R. Co., Inc., 490 N.W. 2d 726, 733 (S.D. 1992) (holding that use of a railroad right-of-way for hikers, bikers, skiers and snowmobilers are "public highway" uses that are "compatible and consistent with its prior use as a public railway. No greater burden has been imposed upon the servient estate."), cert. denied, 507 U.S. 914 (1993); Rieger v. Penn Cent. Corp., No. 85-CA-11, 1985 WL 7919 (Ct. App. Greene County, Ohio, May 21, 1985) (finding

9

that a railroad easement had not been extinguished and could be transferred to the state for trail use "because the proposed use is similar to that originally contemplated and 'because the general purpose to which the easement was and is applied are the same; to wit, a <u>public way</u> to facilitate the transportation of persons and property. Means and appliances are different, but the objects are similar . . . .'").

This case, however, is not controlled by the law of these other states. Instead, the scope of the right-of-way conveyed to the Railroad by deed in this case is a question of Pennsylvania law. As explained above and as set forth in Defendant's opening brief, Pennsylvania law supports the conclusion that railbanking and interim trail use are both permissible uses of the right-of-way acquired by the Railroad. Such uses therefore do not result in a taking of the limited reversionary interest that the class members hold in this right-of-way.

       3.      <u>Category 6 (Condemnations)</u>

There is no dispute that the Railroad acquired certain segments of the subject right-of-way by condemnation, and that those segments were acquired for "railroad purposes." As with the deed interpretation discussed above, Plaintiffs' narrow interpretation of "railroad purposes" as excluding interim trail use is not supported by the language of the referenced condemnation awards, nor by the case law cited by Plaintiffs.

To begin with, the fact that the Railroad was granted authority to condemn a right-of-way is indicative of the public nature of that right-of-way since condemnation authority "can be exercised only for a public purpose intended to benefit the public." <u>Lacy v. Montgomery</u>, 124 A.2d 492, 497 (Pa. Super. 1956). In addition, because the right-of-way at issue in this case was acquired for a public purpose, it is impressed with a public use and constitutes a public highway.

10

See Def. Mem. at 9-11 (citing cases). The public nature of this right-of-way necessarily informs the determination of what uses of the right-of-way are permissible.

Second, the authorizing legislation that granted the railroad the right to acquire lands by purchase, by gift, or by condemnation, does not expressly limit the types of uses that qualify as railroad uses or railroad purposes. See Def. Mem. at 7-13. Instead, as discussed above, the Railroad was granted broad rights with respect to the acquisition and use of land. As long as its uses relate to railroad purposes, such uses are authorized.

Finally, the case law cited by Plaintiffs does not support their narrow definition of railroad uses or purposes. For example, Plaintiffs rely on Western Pennsylvania Railroad Company v. Johnston, 59 Pa. 290, 1869 WL 7468 (Pa. 1868), in which the Supreme Court of Pennsylvania finds that the condemnation authority granted to railroads by the General Railroad Act of 1849 (Ex. 1) conferred a right to enter, use and occupy land for railroad purposes. The decision describes the right-of-way acquired by condemnation in the following general terms:

> It is an easement merely upon the land, a right of way or passage, with such an occupancy as is necessary to give this right its effect; that is, in constructing, repairing and using the works adapted to the purpose of passage . . . . This being the nature of the interest acquired by a railroad company in land appropriated for the use of its railroad, a mere easement or right of passage for a public purpose, it is a settled principle in our law that this interest is not the subject of a lien or sale under execution.

West. Pa. RR., 1869 WL 7468, *4.[2] However, the decision does not raise or address the question

---

[2]The Supreme Court of Pennsylvania later moved away from using the term "easement" to describe the interest acquired by a railroad through condemnation, noting in subsequent cases that the interest so acquired "is a great deal more than a right of way, and that the term 'easement' in connection therewith was used in a loose way to distinguish it from a fee." Pittock v. Cent. Dist. & Printing Telegraph Co., 31 Pa. Super. 589, 1906 WL 3819, *3 (Pa. Super. 1906) (citations omitted).

of whether a particular use of the right-of-way acquired by condemnation is within the scope of the "right of passage for a public purpose" acquired by the railroad through condemnation. Accordingly, the decision does not inform the issues before this Court.

      Plaintiffs also rely on Pittock v. Central District & Printing Telegraph Company, 31 Pa. Super. 589, 1906 WL 3819 (Pa. Super. 1906), a case in which the court was presented with the question of whether a railroad acquiring a right-of-way by condemnation may then grant permission to a telephone company to erect poles and wires within the right-of-way for the telephone company's private use and profit. In holding that the telephone company could not use and occupy the right-of-way for private purposes "having no reference to the convenience or necessities of the railroad company except the comparatively insignificant use of one telephone wire and the right to attach two telegraph wires to the pole," the court concluded that this private use of a right-of-way condemned for a public use was not an authorized or permissible use of the right-of-way. 1906 WL 3819, *3. Unlike the situation presented in Pittock, interim trail use is a decidedly public use of the subject right-of-way. Accordingly, the Pittock decision does not answer the question presented here.

      In sum, neither the deeds at issue in this case nor the condemnation awards define railroad uses or purposes in the restrictive manner advanced by Plaintiffs. Instead, the Railroad's right to use the subject right-of-way is broad enough to allow for both railbanking and interim trail use of the right-of-way as a matter of Pennsylvania law. Because such uses fall within the scope of the right-of-way at issue, those uses cannot result in a taking of any reversionary

interests held by Plaintiffs.[3]

        D.       The Railroad Has Not Abandoned the Subject Right-of-Way

The determination of whether the actions of the Railroad would constitute an abandonment of its right-of-way but for the preclusive effect of the Trails Act is properly "based upon all the circumstances surrounding the alleged abandonment." Buffalo Township v. Jones, 813 A.2d 659, 665 (Pa. 2002). All the circumstances in this case are addressed in the parties' respective briefs, and those circumstances do not support a conclusion that A&E would be deemed to have abandoned its right-of-way but for the preclusive effect of the Trails Act. See Def. Mem. at 20-29.

In arguing otherwise, Plaintiffs seek to distinguish the facts of this case from those in Buffalo Township, *supra*, by emphasizing that A&E has not conveyed any interest to Elk or Cameron Counties or to the trail sponsor, and thus "has not expressly retained the right to use the land for future railroad use in the deed." Pls.' Opp. at 5. Although Plaintiffs' factual statement is correct, their analysis misses the mark. It is true that A&E has not yet conveyed any interest in its right-of-way to the Counties or to a trail sponsor. However, that fact does not support a finding of abandonment, particularly where A&E continues to negotiate with the Counties and their assignee regarding an interim trail use agreement for the subject right-of-way. In addition, the absence of a deed in which A&E might expressly retain the right to use the subject right-of-way for future active rail use is of no consequence since the NITU itself expressly provides that

---

[3]Although Defendant submits that both railbanking and interim trail use are permissible uses of the subject right-of-way that do not result in liability in this case, should the Court conclude that only one of those uses is a railroad use or serves a railroad purpose, liability would be limited to the additional burden imposed on the existing right-of-way by the use that is found not to relate to railroad purposes.

"[i]nterim trail use/rail banking is subject to the future restoration of rail service and to the user's continuing to meet the financial obligations of the right-of-way." Joint Ex. 10 (NITU at 4). Accordingly, regardless of mechanism that the Railroad and the authorized trail sponsor may choose to implement a trail use agreement,[4] the Railroad's right of re-entry for the purpose of restoring or reconstructing its line for active rail use is provided for in the NITU in accordance with the Trails Act.

E.  Shifting Public Uses

If the Court finds that railbanking and/or interim trail use are not uses that fall within the scope of the right-of-way conveyed to the Railroad by deed or acquired by condemnation, then it is appropriate to reach the question of whether such uses would be permissible in any event since those uses simply represent a shift from one public transportation use to another. Contrary to Plaintiffs' assertions, Defendant is not asking the Court to make up state law in this area. Instead, Defendant's motion asks the Court to apply existing Pennsylvania law to the specific facts of this case.

Plaintiffs argue that Pennsylvania law does not permit such a change in public use, noting that it could not find any Pennsylvania cases that use the term "shifting public use." Pls.' Opp. at 16. However, the term "shifting public use" is simply a modern label applied to describe a common law doctrine that was in existence when this railroad right-of-way was first established. See Def. Mem. at 29-31. It is the concept, not the label, that is important here.

---

[4]The Trails Act does not require a railroad company to convey its ownership interest in a right-of-way to a qualified trail sponsor in order to railbank and allow for interim trail use of that right-of-way. Instead, the Trails Act contemplates that such uses may occur "pursuant to donation, transfer, lease, sale or otherwise in a manner consistent with this chapter[.]" 16 U.S.C. § 1247(d).

Plaintiffs also oppose application of the shifting public use doctrine on the ground that the Pennsylvania cases cited by Defendant do not involve a change in use of a railroad right-of-way. Although those cases involve other types of public rights-of-way, the principle of law is the same. See Def. Mem. at 30 (citing cases). Moreover, Defendant's research did not uncover, nor do Plaintiffs cite, any Pennsylvania case law holding that the common law doctrine that permits a change or shift in the nature or mode of public use of a right-of-way does not apply to railroad rights-of-way. Accordingly, although the application of this doctrine to railroad rights-of-way may be a question of first impression under Pennsylvania law, it is not a question that is foreclosed by Pennsylvania law.[5]

III.   Conclusion

For the reasons set forth in this reply brief and in Defendant's summary judgment memorandum, Defendant respectfully requests that the Court find that railbanking and interim trail use are both permissive uses of the subject right-of-way, that there has been no abandonment of the subject right-of-way but for the Trails Act, and that the present uses of the right-of-way authorized by the Trails Act do not constitute a taking. Based on these findings, Defendant's motion for summary judgment should be granted and Plaintiffs' motion for partial summary judgment should be denied.

---

[5]Plaintiffs' reliance again on Toews, *supra*, and Preseault v. United States, 100 F.3d 1525 (Fed. Cir. 1996), is misplaced. Those decisions, which turned on California and Vermont law, respectively, are not controlling here.

Dated: January 18, 2007

        Respectfully submitted,

        MATTHEW J. McKEOWN
        Acting Assistant Attorney General
        Environment & Natural Resources Division

        s/Kristine S. Tardiff
        KRISTINE S. TARDIFF (NH 10058)
        United States Department of Justice
        Environment & Natural Resources Division
        Natural Resources Section
        53 Pleasant Street, 4th Floor
        Concord, NH 03301
        TEL: (603) 230-2583
        FAX: (603) 225-1577

        KELLE S. ACOCK (TX24041991)
        United States Department of Justice
        Environment & Natural Resources Division
        Natural Resources Section
        P.O. Box 663
        Ben Franklin Station
        Washington, DC 20044-0663

<u>OF COUNSEL</u>:

ELLEN D. HANSON, General Counsel
EVELYN KITAY, Attorney
Surface Transportation Board
Office of General Counsel
Washington, D.C. 20423